UNITED STATES of America, Appellee,

v.

George Keith GARMAN, Appellant.

No. 83–5014.

United States Court of Appeals,
Fourth Circuit.

Argued Oct. 5, 1984.

Decided Nov. 13, 1984.

Certiorari Denied Feb. 25, 1985.
See 105 S.Ct. 1361.

Paula M. Junghans, Baltimore, Md. (Ronald B. Rubin, Garbis & Schwait, Baltimore, Md., on brief), for appellant.

Glenda G. Gordon, Asst. U.S. Atty., Baltimore, Md. (J. Frederick Motz, U.S. Atty., Max H. Lauten, Asst. U.S. Atty., Baltimore, Md., on brief), for appellee.

Before WINTER, Chief Judge, SPROUSE, Circuit Judge, and HAYNSWORTH, Senior Circuit Judge.

HARRISON L. WINTER, Chief Judge:

Defendant was convicted of the willful failure to file federal income tax returns for the years 1977–79 in violation of 26 U.S.C. § 7203, and he appeals. He contends that he was improperly tried in the District of Maryland, that he was deprived of his rights under the Fifth and Sixth Amendments when he was denied a continuance in order to present additional witnesses, and that there was error in the district court's jury instructions.

We see no merit in any of these contentions, and we therefore affirm.

I.

Defendant resides in Baldwin, Maryland, and Maryland is within the internal revenue district which has a service center in Philadelphia, Pennsylvania. Defendant argues that the district court erred in denying his pretrial motion to dismiss for improper venue because the criminal act charged, the willful failure to file income tax returns, occurred in the Eastern District of Pennsylvania and not in the District of Maryland, where defendant was tried and convicted. Defendant relies on the well-established rule that when a crime consists of a failure to act, the place fixed for performance of the act is the proper venue. *See, e.g., United States v. Rice,* 659 F.2d 524, 526 (5 Cir.1981); *Bowles v. United States,* 73 F.2d 772, 774 (4 Cir. 1934).

The places for filing non-corporate income tax returns are fixed by 26 U.S.C. § 6091(b)(1)(A), which provides that returns shall be made "(i) in the internal revenue district in which is located the legal residence ... of the person making the return, or (ii) at a service center serving the internal revenue district referred to in clause (i)." The statute also authorizes the Secretary by regulations to designate the place of filing.

The Secretary has adopted regulations governing the place for filing income tax returns. 26 C.F.R. §§ 1.6091–1 *et seq.* The pertinent portion (§ 1.6091–2) is set forth in the margin.[1] While the regula-

---

1. **§ 1.6091–2 Place for filing income tax returns.**

Except as provided in § 1.6091–3 (relating to income tax returns required to be filed with the Director of International Operations) and § 1.6091–4 (relating to exceptional cases):
(a) **Individual estates, and trusts.**

(1) Except as provided in paragraph (c) of this section, income tax returns of individuals, estates and trusts shall be filed with the district director for the internal revenue district in which is located the legal residence or principal place of business of the person required to make the return, or, if such person

tions seem unnecessarily obscure, we do read them to establish alternative places for filing individual tax returns: the internal revenue district where the taxpayer resides if the return is hand-carried, or the service center serving the internal revenue district where the taxpayer resides if the return is mailed.[2] Thus we read the regulations adopted pursuant to § 6091 to prescribe two places of filing.

This reading of the regulations is consistent with the legislative history of the 1966 amendment to § 6091, which first authorized filing at a service center as an alternative and addition to the pre-existing requirement of filing within the district of residence. The purpose of the amendment, which authorized filing at places where the

Internal Revenue Service had recently installed automatic data processing equipment, was to maximize use of such equipment and to speed the processing of returns and payment of tax refunds.

The Senate Report on this amendment specifically discusses venue in cases of willful failure to file under § 6091 as amended. The Report concluded that venue is proper in either the district of residence or the district where the service center is located.[3] Indeed, in connection with the amendment of § 6091, Congress thought it appropriate to amend 18 U.S.C. § 3237 to provide that an individual prosecuted for willful failure to file in a district other than that of his residence has the right to have the case transferred to the district of his residence.[4]

has no legal residence or principal place of business in any internal revenue district, with the District Director at Baltimore, Md. 21202. (2) An individual employed on a salary or commission basis who is not also engaged in conducting a commercial or professional enterprise for profit on his own account does not have a "principal place of business" within the meaning of this section.

(b) **Corporations.** Except as provided in paragraph (c) of this section, income tax returns of corporations shall be filed with the district director for the internal revenue district in which is located the principal place of business or principal office or agency of the corporation.

(c) **Returns filed with service centers.** Notwithstanding paragraphs (a) and (b) of this section, whenever instructions applicable to income tax returns provide that the returns be filed with a service center, the returns must be so filed in accordance with the instructions.

(d) **Hand-carried returns.** Notwithstanding paragraphs (1) and (2) of section 6091(b) and paragraph (c) of this section:

(1) **Persons other than corporations.** Returns of persons other than corporations which are filed by hand carrying shall be filed with the district director (or with any person assigned the administrative supervision of an area, zone or local office constituting a permanent post of duty within the internal revenue district of such director) as provided in paragraph (a) of this section.

**2.** We distill this from the following reading of the regulation:

Paragraph (a) says that, except as provided in paragraph (c), returns shall be filed in the district of residence. Paragraph (c) says that

returns shall be filed with the service center serving the district of residence, but paragraph (d) says that notwithstanding the provisions of paragraph (c), hand-carried returns of persons other than corporations shall be filed in the district of residence.

**3.** Senate Report No. 1625, 89th Cong., 2nd Sess. (1966), reprinted in U.S.Code Cong. & Ad.News 3676, 3680–81. The pertinent language of the report follows:

Present law provides that the willful failure to file a tax return is a misdemeanor. For purposes of determining where a prosecution of this offense is to occur, present case law holds that the venue is to be in the judicial district in which the return was required to be filed.

Under the bill, taxpayers are required to file returns in either of two judicial districts in the majority of cases. If they choose to mail their return, regulations may require that they be filed in the judicial district in which their service center is located. If they choose to file their return in person, by hand-carrying, they are required to file it at their district director's office. In most cases, the service center and the district office will be located in different judicial districts. Since venue for a willful failure to file prosecution lies in either district, the Government under the bill could bring the prosecution in either district. (footnote omitted).

**4.** The discussion of the Report on the amendment to § 3237 follows:

Your committee agrees with the Committee on Ways and Means that a prosecution for willful failure to file a return should be brought as close to the defendant's residence as possible in order to avoid hardship to him,

■ We conclude that filing was required in either the District of Maryland or the Eastern District of Pennsylvania, and therefore defendant's willful failure to file was a crime committed in more than one district. Since 18 U.S.C. § 3237(a) provides that a crime committed in more than one district may be prosecuted in any district in which it was "begun, continued, or completed," the District of Maryland had venue here.[5]

## II.

We turn next to the contention that the district court's denial of a continuance denied defendant his constitutional rights and constituted reversible error.

Defendant's trial began on November 22, 1982, the Monday before Thanksgiving. The trial was not protracted because the sole contested issue was whether the failure to file was willful. At the end of the first day of trial the government reported that it had one more witness for its case in chief. The district court then told defense counsel to have her witnesses ready for the next day; defense counsel agreed with the district court that it was highly probable the case might conclude on Wednesday; and the district court advised counsel that it would sit later than usual on Tuesday.

On Tuesday, the second day of trial, the government completed its case before the midmorning recess. Defense counsel, in response to an inquiry from the district court, said that she planned to present two witnesses before lunch and two, including the defendant, after lunch. After the lunch recess, however, defense counsel reported that she intended to call three more witnesses on Wednesday. The district court reminded her that the court planned to sit late, and told her she should get her witnesses there that day because the taking of evidence would end once there was nothing more to present.[6]

Late in the afternoon, after presenting all available witnesses, defense counsel stated her desire to call Constantino Bakas and Charles Brooks as witnesses on Wednesday. The district court reminded her of its concern about the approaching Thanksgiving holiday and its desire to complete the case on Wednesday, pointing out that counsel had not earlier reported that Mr. Brooks could not be available on Tuesday. At the district court's suggestion, some of the evidence sought to be proven was stipulated, and certain legal documents were admitted into evidence. The government then presented its one available rebuttal witness, though it represented that it might have as many as five if the taking of evidence was extended into Wednesday. The taking of evidence concluded and the district court adjourned at about 5:30 p.m.

The government argues that the proposed additional evidence was only cumulative of what was already before the jury, and that the district court could therefore exclude the testimony under Federal Evidence Rule 403 because its probative value was substantially outweighed by "considerations of undue delay, waste of time, or needless presentation of cumulative evidence." As a technical matter we doubt that Rule 403 is applicable when the district court did not purport to exclude evidence under Rule 403, but instead denied a continuance so that the witnesses were not

his attorneys, and witnesses. In this regard, it is this committee's understanding that the Government in practice will bring prosecutions for willful failure to file returns in the judicial district where the taxpayer resides (or the closest district possible). However, to be sure that the taxpayer has the right to be tried in the district in which he resides, the bill amends present law to provide that he may elect to remove his trial to the judicial district of his residence.

5. We cannot refrain from calling attention to the anomalous result which would flow from

adopting defendant's contention that venue was solely in the Eastern District of Pennsylvania, because defendant, under the provisions of § 3237(b), would have the absolute right to have his case transferred to the District of Maryland. If Maryland would not have venue in the first instance, it is difficult to understand why a transfer to Maryland would be authorized as a matter of right.

6. Counsel was assisted at the trial by another lawyer who was free to leave the courtroom and communicate with the proposed witnesses.

even called. Rather, it seems to us that the issue is whether the district court abused its discretion in denying a continuance. *See Ungar v. Sarafite*, 376 U.S. 575, 589, 84 S.Ct. 841, 11 L.Ed.2d 921 (1964). As a practical matter, what we must decide is the same under either test—was defendant foreclosed from presenting his complete defense by the district court's limitation on the taking of evidence? The question is largely a factual one, and it is to the facts that we turn.

The government amply proved for the years in question that defendant earned taxable income and that he failed to file income tax returns. The government showed that defendant's unpaid tax liability for the years in question was $28,700. Defendant himself conceded that for each of the years he knew that he was supposed to file tax returns, so the only contested issue for the jury was whether defendant's failure to file was willful.

The government proved that in 1978 defendant hired an accountant, Leonard Miller, to prepare defendant's 1977 tax return. Miller obtained three extensions for filing the return, and finally quit in January 1979 because defendant failed to provide him with sufficient information to prepare the return. There was evidence that during this same period defendant hired another accountant, Sylvan Offit, to prepare a personal net worth statement for use in refinancing some properties owned by defendant, and that defendant furnished the necessary data fast enough for the statement to be prepared within three weeks.

In 1978 defendant worked for JCB, Inc. and then for American Liner Corporation. While at American Liner he had Jerome Lichter, an accountant who worked there, obtain two extensions of time to file his 1978 return, but Lichter could not prepare the return because defendant never furnished the necessary information. Defendant then asked Charles Decker, a bookkeeper for American Liner, to prepare his 1977 and 1978 returns, but Decker could not do so with the information defendant supplied.

Defendant next sought help from Robert Thompson, an accountant, but Thompson could not get the files necessary to prepare a return. Finally, in April 1980, defendant went to Joseph Tarr and Mark Finley, who procured two extensions of time for filing the 1979 return. By December 1980, however, defendant had not paid their fee so they did not complete the return.

The IRS special agent who investigated defendant's case testified that when he interviewed defendant, the latter agreed to discuss his tax affairs. Defendant admitted that he had not filed returns and he took the agent to the office of Constantino Bakas (his attorney) and then to the office of his accountant, telling both to give the special agent whatever information he requested.

Garman's defense was that he did not act willfully because he thought that as a result of casualty and other losses he owed little if any tax, and he had made good faith attempts to have returns prepared and filed. He showed that he was evicted from his home in January 1976 while he was away, and that when he returned, his tools, machinery, furniture and personal records were gone. Litigation ensued and defendant eventually won the right to buy the property, but it was in very damaged condition when he regained possession. He estimated his losses from the eviction were $100,000 and damage to the property approximately $20,000.

It was part of the government's proof that when defendant worked for American Liner, his annual salary was $104,000 but that no taxes were withheld because first he was treated as an independent contractor and then he claimed 102 exemptions. Defendant testified that he wanted to avoid withholding because of his substantial losses and that the number of exemptions claimed was fixed by employees of American Liner and not by him.

Against this factual background, defendant's counsel made the proffer set forth

below.[7] Following the proffer, the district court received into evidence documentary evidence and stipulations to establish that defendant had filed suits (a) in 1976 regarding the eviction from his home, (b) in 1976 regarding damage to his property after his eviction, (c) in 1976 regarding an insurance claim for a stolen pump, and (d) in 1975 and 1976 regarding some cattle.

■ We do not think that the proffered evidence was of sufficient significance that we could conclude that the district court abused its discretion in denying the continuance or that defendant's right to present his entire defense was violated. There is nothing new in what defendant sought to present through the two witnesses. The fact that defendant, during his absence, was evicted from his home, lost property before he returned, sued to regain the right to occupy the property and regained it only in damaged condition, was amply proven. The fact that there was no withholding on defendant's salary from American Liner was not questioned and the reason for non-withholding, that defendant claimed he had offsetting losses, was proven. Mr. Brooks' proffered testimony that he took part in the decision to withhold taxes would have added nothing because this advice was based, as defendant himself admitted, on his claim of offsetting losses. The validity of this claim could not be established through Mr. Brooks; it could only be proven from other sources.

Similarly, we think that the testimony of Mr. Bakas was of little significance. Documentary evidence already proved that there was litigation over cattle. Three witnesses—the defendant, the IRS agent, and an accountant—already proved that the defendant told Bakas to cooperate with the agent's investigation. Clearly, testimony from Bakas on these matters would be cumulative.

We therefore conclude that there was no reversible error in the district court's refusal to continue the taking of evidence to permit these witnesses to testify.

### III.

■ In instructing the jury on the question of willfulness, the district court gave the standard instruction, but, at the government's request, added:

A failure to file a tax return may be willful even if it is the result of procrastination, unless you find that such failure was accidental, inadvertent or negligent.

Defendant contends that the addition constituted reversible error because (a) it was an "unnecessary embellishment" that made the jury believe defendant was arguing procrastination as a defense, and (b) it may have led the jury to believe that the burden was on defendant, upon proof by the government of procrastination, to show that his conduct was not willful. We are not persuaded by either argument.

Giving the additional instruction was proper. It was a correct statement of the law. *See United States v. Browney,* 421 F.2d 48, 50 (4 Cir.1970). In this case there was evidence of procrastination and, whether defendant intended to rely upon it or not, the government was entitled to have the jury told that procrastination was no defense. We do not read the additional instruction as purporting to shift the bur-

---

7. MS. JUNGHANS: We proffer that Mr. Brooks is an attorney who was Mr. Garman's attorney prior to the formation of American Liner, who handled some of the litigation connected with the events of the eviction and regaining the property in Baldwin, Maryland.

He would testify also to the fact that Mr. Garman was considered an independent contractor with American Liner and that there was—that Mr. Brooks participated in the decision that it was appropriate not to have withholding from Mr. Garman's salary.

Mr. Bakas would testify as to some of the litigation he handled for Mr. Garman with respect to cattle, also being involved in some of the litigation with respect to the property and the regaining of the property in Baldwin, Maryland.

Mr. Bakas would also testify as to being visited by Special Agent Schmoll in the company of Mr. Garman and instructions he was given by Mr. Garman with respect to the cooperation with the Internal Revenue Service.

**224**

den of proof.[8] Nor do we find any such implied meaning. The phrase "unless you find", read in context, was plainly meant only to distinguish procrastination from accidental, inadvertent or negligent conduct.

AFFIRMED.

---

**8.** Defendant lodged no objection to the instruction on this ground before the district court, so that our review is limited to a determination of whether there was plain error.

