**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Thomas G. CLINES, Defendant–**
**Appellant.**

**No. 91–5382.**

United States Court of Appeals,
Fourth Circuit.

Argued Oct. 29, 1991.

Decided Feb. 27, 1992.

As Amended March 27, 1992.

Admin.News 4953, 4984, 4987.

William A. McDaniel, Jr., Law Offices of William Alden McDaniel, Jr., Baltimore, Md., argued, for defendant-appellant.

William Michael Treanor, Associate Counsel, Office of Independent Counsel, Washington, D.C., argued (Lawrence E. Walsh, Independent Counsel, Stuart E. Abrams, Associate Counsel, Gregory A. Mark, Associate Counsel, Geoffrey S. Berman, Associate Counsel, on brief), for plaintiff-appellee.

Before PHILLIPS, SPROUSE, and WILKINS, Circuit Judges.

## OPINION

WILKINS, Circuit Judge:

Thomas G. Clines was convicted of underreporting gross receipts on his federal individual income tax returns and falsely stating on the returns that he did not have an interest in a financial account in a foreign country. 26 U.S.C.A. § 7206(1) (West 1989). He was also found guilty of failing to file reports disclosing to the Commissioner of Internal Revenue an interest in a foreign financial account. 31 U.S.C.A. § 5314 (West 1983). On appeal he claims that the evidence is insufficient to support these convictions and that venue in the United States District Court for the District of Maryland was improper. We affirm.

### I.

For purposes of our review of the verdict of the jury, the following summary of the evidence is presented in the light most favorable to the Government. *See Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct.

457, 469, 86 L.Ed. 680 (1942). After Air Force Major General Richard V. Secord began to supervise a covert operation to provide arms and ammunition to the Nicaraguan Contras, he recruited Clines, an Army veteran and former senior operative in the Central Intelligence Agency, to join the project as an arms procurer. Secord also enlisted the aid of businessman Albert Hakim, who made arrangements with Compagnie de Services Fiduciaires S.A. (CSF), based in Geneva, Switzerland, to establish the financial infrastructure of the operation.

CSF provided to its individual and corporate clients a broad range of financial and investment management services that included assisting clients in the formation of corporations, providing corporate bookkeeping and accounting services, and accepting funds into accounts and investing the funds in bonds, securities, and commodities. At Hakim's request, CSF and its chief officer, William Zucker, formed eleven shell corporations chartered in Panama, Liberia, or Switzerland for the purpose of collecting money and financing the procurement of weapons. These corporations included Energy Resources International S.A. and Lake Resources Incorporated, the principal entities used to receive funds for the project. Pursuant to fiduciary agreements between Hakim and CSF, CSF undertook bookkeeping, accounting, and financial management responsibilities in the operation of Energy Resources, including investment of funds and management of accounts for the project and for individuals who shared in profits generated from the sale of arms and ammunition to the Contras.

Secord, Hakim, and Clines agreed that in 1985 Clines would receive 20 percent of the profits resulting from each arms shipment; Secord and Hakim would each receive 40 percent. As each phase of the project was completed, Secord and Hakim calculated the division of profits based on the agreed percentages and authorized CSF to distribute the profits. Upon receiving authorization from Secord and Hakim, CSF debited from the Energy Resources ledger Clines' share of the profits from each arms ship-ment and then credited the profit share to the "TC capital account" also maintained on the Energy Resources ledger. The TC capital account page of the ledger recorded the profit allocations to Clines and transfers or withdrawals of funds from the capital account that were made at Clines' direction.

Clines had complete authority to transfer or withdraw TC capital account funds. Withdrawals from the account in 1985 recorded on the Energy Resources ledger included four wire transfers totalling $155,-000 from Clines' capital account to his account in a Virginia bank and cash withdrawals by him from the capital account totalling $217,820. Clines also ordered the transfer by CSF of $210 from his capital account to Union Bank of Switzerland to pay a rental fee for his safety deposit box. Because payments were made from the Energy Resources TC capital account at Clines' instructions, Zucker and other CSF officials considered the funds in the TC capital account to belong to Clines.

Following an investigation of the sale of arms to the government of Iran and diversion of sale proceeds to purchase weapons for the Contras, indictments were returned against Clines and others. Count One of the Clines indictment alleged that on his 1985 federal individual income tax return, Internal Revenue Service Form 1040, Clines underreported gross receipts and falsely stated that he did not have an interest in or authority over a financial account in a foreign country. Count Two contained similar charges relating to Clines' 1986 federal individual income tax return. Counts Three and Four alleged that in calendar years 1985 and 1986 he failed to file Department of the Treasury Form 90–22.1 reporting an interest in a foreign financial account.

Prior to trial Clines moved to dismiss Counts Three and Four, claiming that venue in the United States District Court for the District of Maryland was improper. He contended that because the instructions for completing Form 90–22.1 indicated the Department of the Treasury in Detroit, Michigan as the location where the form

was to be filed, venue for the crime of failure to file was proper only in the United States District Court for the Eastern District of Michigan. The district court denied the motion, finding that because the instructions also provided that the form could be hand-carried to "any local IRS office" for delivery to the Department of the Treasury in Detroit, Michigan, venue for the offense of failure to file the form was not improper in Maryland. The court concluded that since venue in Maryland was proper for Counts One and Two, the decision of the Government to prosecute Counts Three and Four in the District of Maryland was reasonable and convenient to the parties.

Clines unsuccessfully moved for a judgment of acquittal at the conclusion of the Government's case, contending that he did not have a reportable interest in or authority over the capital accounts within the meaning of the applicable statutes and regulations. He contended that because he could obtain his share of a profit distribution only after Secord and Hakim determined the amount of his share and then directed that his share be credited to his capital account, he had no independent authority over the account. He also claimed that the corporate ledgers reflected merely bookkeeping entries not cognizable as reportable accounts.

Following Clines' convictions on all counts, the court imposed a sentence of sixteen months imprisonment and a fine of $40,000. Clines challenges his convictions on Counts One and Three on the grounds that the evidence was insufficient to support a finding by the jury that he had a reportable interest in a foreign financial account maintained at a financial institution. He challenges the convictions obtained as a result of Counts Three and Four on the grounds that venue in the District of Maryland was improper. He

does not contest his conviction on Count Two.[1]

## II.

### A.

The Bank Secrecy Act of 1970 was enacted "to require certain reports or records where they have a high degree of usefulness in criminal, tax, or regulatory investigations or proceedings." 31 U.S.C.A. § 5311 (West 1983). To accomplish this end, the Act established reporting requirements for domestic transactions in United States currency, 31 U.S.C.A. § 5313 (West 1983), and transactions involving foreign financial agencies, 31 U.S.C.A. § 5314. The provisions of the Act relating to foreign financial transactions resulted from the concern of Congress that foreign financial institutions located in jurisdictions having laws of secrecy with respect to bank activity were being extensively used to violate or evade domestic criminal, tax, and regulatory requirements. *California Bankers Ass'n v. Shultz,* 416 U.S. 21, 27, 94 S.Ct. 1494, 1500, 39 L.Ed.2d 812 (1974).

Congress instructed the Secretary of the Treasury to promulgate regulations requiring citizens of the United States to keep records and file reports of transactions with foreign financial agencies. 31 U.S.C.A. § 5314. The Secretary's regulations require that a person subject to the jurisdiction of the United States shall report to the Commissioner of Internal Revenue "a financial interest in, or signature or other authority over, a bank, securities or other financial account in a foreign country." 31 C.F.R. § 103.24(a) (1991). The regulations further provide that reports required by section 103.24(a) shall be filed with the Commissioner on forms prescribed by the Secretary. 31 C.F.R. § 103.26(d) (1987).

The Secretary implemented the regulatory requirements with a two-step report-

---

1. Count Two alleged that Clines underreported gross receipts on his 1986 federal individual income tax return Form 1040 and falsely stated that he did not have an interest in a financial account in a foreign country. This allegation was based on Clines' investment account main- tained in 1986 at CSF under the assumed name "C. Tea." Unlike the Energy Resources TC capital account, Clines concedes that the C. Tea investment account was an interest in a foreign financial account within the ambit of 31 U.S.C.A. § 5314 and the applicable regulations.

ing process. Form 1040, Schedule B, Part III instructed a taxpayer to indicate an interest in a financial account in a foreign country by checking "Yes" or "No" in the appropriate box. Form 1040 then referred the taxpayer to Form 90–22.1 which provided that it should be used to report a financial interest in or authority over bank accounts, securities accounts, or other financial accounts in a foreign country. Instruction F for completing Form 90–22.1 provides that "[t]he term 'other financial account' means any other account maintained with a financial institution."

## B.

Clines argues that Energy Resources was not a "financial institution," *see* 31 U.S.C.A. § 5312(a)(2) (West 1983 & Supp. 1991); 31 C.F.R. § 103.11(e) (1986); that the TC capital account was not an "other financial account," *see* 31 C.F.R. § 103.-24(a); Form 90–22.1, Instruction F; and that he had no reportable "financial interest in, or signature or other authority over" the capital account, 31 C.F.R. § 103.-24(a); *see* Form 90–22.1, Instruction H. The Government maintains that the TC capital account was a reportable foreign financial account maintained by Clines at CSF. We address each of these arguments in turn.

■ Clines first claims that the TC capital account was not "maintained with a financial institution" within the meaning of Form 90–22.1, Instruction F because it was recorded on the ledger of Energy Resources, an organization he contends was not a "financial institution" as defined in the statute and the regulations, 31 U.S.C.A. § 5312(a)(2); 31 C.F.R. § 103.11(e). We conclude that because the Energy Resources TC capital account was maintained at CSF by CSF employees who transmitted funds for Clines at his direction, CSF is an institution that fits within the definition of the term. By holding funds for third parties and disbursing them at their direction, CSF functioned as a bank. *See* 31 U.S.C.A. § 5312(a)(2)(C); 31 C.F.R. § 103.11(e)(1). Through its maintenance for its clients of investment accounts that consisted of vari-

ous securities, currencies, and commodities, it was "an investment banker or investment company." 31 U.S.C.A. § 5312(a)(2)(I). In sending wire transfers of funds to Clines' United States bank account and to Union Bank of Switzerland to pay Clines' safe deposit box fee, CSF operated as "a licensed sender of money," 31 U.S.C.A. § 5312(a)(2)(R); *see* 31 C.F.R. § 103.11(e)(5), "or other person engaged in the business of transmitting funds abroad for others," 31 C.F.R. § 103.11(e)(5). The term "financial institution" is broadly defined, *United States v. Dela Espriella*, 781 F.2d 1432, 1436 (9th Cir.1986), and we hold that CSF fits well within the ambit of that term.

■ Second, Clines contends that the reporting requirements do not encompass a capital account maintained on the ledger of Energy Resources; a capital account, he contends, is a mere bookkeeping entry rather than an account. Form 90–22.1 provides that it should be used by a taxpayer to report an interest in a bank account, securities account, or other financial account in a foreign country. Instruction F defines the term "other financial account" as "any other account maintained with a financial institution or other person who accepts deposits, exchanges or transmits funds." Because we have concluded that CSF is a financial institution, and because the evidence established that CSF accepted credits to and transmitted sums from the capital account to Clines' other domestic and foreign accounts, we reject the argument that the capital account does not fall within the definition of a financial account.

■ Clines also claims that because he had no independent authority to direct payments into or receive disbursements from the TC capital account prior to allocation of his share of the profits by Secord and Hakim, he had neither an interest in nor any other authority over the account. Instruction H for completing Form 90–22.1 provides that a person has signature authority over an account if that person may control the disposition of money in the account on authority of his or her signature. The instruction defines "other authority" as au-

thority that "exists in a person who can exercise [power comparable to signature authority] over an account by direct communication to the bank or other person with whom the account is maintained, either orally or by some other means."

With respect to the TC capital account, the evidence established that Clines' actual control of the funds was complete following allocation of his profit share when it was made unreservedly available to him. Following allocation neither Hakim nor Secord were consulted regarding disbursement of the funds to him. Clines' requests for payments from the account were honored by CSF in any form that he directed: currency was transferred directly to him, proceeds were transferred by wire to his Virginia bank account, and funds were transferred to a bank in Switzerland. Clines' complete control of funds maintained in the capital account at his disposal subsequent to allocation resulted in his having "other authority" over the account notwithstanding his lack of control over disposition of the funds prior to allocation. We hold that the evidence is sufficient to support the verdict of the jury on Counts One and Three.

### III.

■ A defendant is entitled to be tried "by an impartial jury of the State and district wherein the crime shall have been committed." U.S. Const. amend. VI. The situs of a crime consisting of a failure to act is the place fixed for performance of the act. *Johnston v. United States*, 351 U.S. 215, 76 S.Ct. 739, 100 L.Ed. 1097 (1956). The crime of failure to file returns is committed in the district or districts where the taxpayer is required to file the

returns. *United States v. Garman*, 748 F.2d 218 (4th Cir.1984), *cert. denied*, 470 U.S. 1005, 105 S.Ct. 1361, 84 L.Ed.2d 382 (1985). The version of Form 90–22.1 for use in reporting an interest in foreign bank and financial accounts maintained in 1986 [2] provides:

> This report shall be filed on or before June 30 each calendar year with the Department of the Treasury, Post Office Box 32621, Detroit, MI 48232, or it may be hand carried to any local office of the Internal Revenue Service for forwarding to the Department of the Treasury, Detroit, MI.

■ Clines contends that venue was proper only in the United States District Court for the Eastern District of Michigan because Michigan is the location of the post office box to which reports may be mailed and is also the ultimate location designated for receipt of the Form by the Secretary of the Treasury.[3] Because Form 90–22.1 also provides that filing may occur in any local office, we conclude that venue in the District of Maryland was proper.

Our conclusion is consistent with the principal concern the courts have advanced as underlying the constitutional venue provisions: conducting trials in the vicinage of the crime in order to avoid unfairness and hardship to defendants as a result of prosecutions in remote places. *See, e.g., United States v. Cores*, 356 U.S. 405, 407, 78 S.Ct. 875, 877, 2 L.Ed.2d 873 (1958). This "basic policy of the Sixth Amendment" is best served by holding trial where "[t]he witnesses and relevant circumstances surrounding the contested issues" are located. *Travis v. United States*, 364 U.S. 631, 640, 81 S.Ct. 358, 364, 5 L.Ed.2d 340 (1961)

---

**2.** The version of Form 90–22.1 in effect in 1985 specifies Memphis, Tennessee as the location of the Department of the Treasury post office box and place for forwarding to the Department of the Treasury. With respect to the charge in Count Three of failure to file a report in 1985, Clines argues that venue would have been proper only in the Western District of Tennessee. Because the same reasoning applies, for ease of discussion we refer only to Detroit, Michigan as the place of filing for both 1985 and 1986.

**3.** Clines also claims that to allow the Government to institute prosecution in any district because the Form provides that filing may be accomplished by hand-carrying the Form to "any local office of the Internal Revenue Service" would permit nationwide venue and would encourage forum shopping because the place of trial could be determined at the unfettered choice of the Government. We need not address this argument because the record contains no evidence that the Government engaged in forum shopping.

(Harlan, J., dissenting); *see also* Note, *Criminal Venue in the Federal Courts: The Obstruction of Justice Puzzle*, 82 Mich.L.Rev. 90, 105 (1983) (concluding that purpose of constitutional venue limitations is "to promote thorough factfinding"). Clines was a Virginia resident whose accountant had offices in Maryland where he prepared Clines' 1985 and 1986 federal income tax returns. In addition, Clines and his bookkeeper met with and corresponded with his accountant in Maryland. We hold that venue properly lay in the District of Maryland based on the language of Form 90–22.1 and that venue in this location did not impermissibly offend Clines' rights guaranteed by the Sixth Amendment.

AFFIRMED.