James Dennis **MURPHY, Jr., Appellant,**

v.

**UNITED STATES of America, Appellee.**

Crim. A. No. 95–96–R.

United States District Court,
W.D. Virginia,
Roanoke Division.

July 9, 1996.

---

William Harrison Cleaveland, Rider, Thomas, Cleaveland, Roanoke, VA, for James Dennis Murphy, Jr.

Julie C. Dudley, U.S. Attorney's Office, Roanoke, VA, for U.S.

## MEMORANDUM OPINION AND ORDER

WILSON, District Judge.

James Dennis Murphy, Jr. appeals his conviction of violating the Child Support Recovery Act ("CSRA"), 18 U.S.C. § 228. At trial before a United States Magistrate Judge, Murphy challenged personal jurisdiction over him, venue in the Western District of Virginia, and the constitutionality of the CSRA. The Magistrate Judge overruled these challenges, convicted Murphy, and this appeal followed. The court finds that venue is not proper in this district and vacates Murphy's conviction. The court does not, therefore, reach the question of the CSRA's constitutionality.

### I.

After a bench trial, the Magistrate Judge convicted Murphy of one count of a two-count information alleging violations of the Child Support Recovery Act, 18 U.S.C. § 228. Murphy and Linda Troutt Murphy married in Oklahoma in 1978. In 1981, their daughter, Erin Rose Murphy, was born. The Murphys divorced in 1985. The Oklahoma divorce decree gave Linda Murphy custody of Erin and ordered James Murphy to make child support payments to the District Court of Oklahoma County, Oklahoma.

Linda and Erin moved to Virginia and James moved to Texas. Pursuant to the Texas Uniform Reciprocal Enforcement of Support Act, **Tex.Fam.Code Ann.** § 21 (repealed 1995), the 18th Judicial District Court of Johnson County, Texas ordered Murphy to pay arrearages in child support in 1990 by sending payments to the Texas Attorney General. The State of Texas would later distribute them to Linda. Murphy later moved to Florida and did not make the required payments. Murphy was charged in 1995 in the Western District of Virginia, where Linda and Erin now reside, with failure to pay the child support obligation as ordered by the Texas court. Murphy came to the Western District for trial before the United States Magistrate and was convicted of one count of violating the CSRA. Murphy objected not only to venue and jurisdiction, but also challenged the constitutionality of the CSRA. The Magistrate overruled Murphy's objections.[1] *See United States v. Murphy*, 893 F.Supp. 614 (W.D.Va.1995). This appeal followed.

## II.

The CSRA makes it a federal crime for a parent to "willfully fail[ ] to pay a past due support obligation with respect to a child who resides in another State." 18 U.S.C. § 228. The statute defines "past due support obligation" as any amount "determined under a court order or an order of an administrative process pursuant to the law of a State to be due from a person for the support and maintenance of a child or of a child and the parent with whom the child is living" and which is one year past due or which is greater than $5,000. § 228(d). Murphy's conviction was based on the 1990 Texas order, which determined that there was an arrearage in child support payments, not the original 1985 Oklahoma divorce decree.[2]

▮ Murphy contends his prosecution in the Western District of Virginia was improper because venue does not lie here. Because Murphy was directed to pay the child support in Texas and was never ordered to make payments in Virginia, the court agrees. A criminal defendant's right to proper venue is rooted in the United States Constitution. Article III of the Constitution states that the trial of all crimes "shall be held in the state where the said crimes shall have been committed." **U.S. Const.** art. III, § 2. Venue is also provided for in the Sixth Amendment, which mandates that an accused shall be tried by a jury in the "State and district wherein the crime shall have been committed." **U.S. Const.** amend. VI, § 2. Based on this constitutional language, Federal Rule of Criminal Procedure 18 provides:

### Place of Prosecution and Trial

Except as otherwise permitted … the prosecution shall be had in a district in which the offense was committed. The court shall fix the place of trial within the district with due regard to the convenience of the defendant and the witnesses and the prompt administration of justice.

**Fed.R.Crim.P.** 18. Recognizing that the Constitution does not limit venue to only one district,[3] the crucial inquiry for the court is to determine the situs of the crime.

---

1. Although Murphy's counsel did not actually use the term venue, he objected to the case being "heard in the Western District of Virginia" because the charge was based on a Texas order not a Virginia state court order. The court finds that this was a valid objection to venue in the Western District of Virginia.

2. This is significant because at the time of prosecution, a state court already had determined that an arrearage in child support existed. One federal court has held that it is not necessary for a state court to have determined the existence of an arrearage before prosecution under the CSRA. *See United States v. Collins*, 921 F.Supp. 1028, 1031–1032 (W.D.N.Y.1996). The court questions that holding because it requires federal courts to police support agreements, historically

a core state function. If Congress had intended to submerge federal courts in child support determinations, with the potential for inconsistent findings between state and federal courts regarding the existence and amounts of arrearages, it could have said so in clear terms.

3. *See United States v. Lombardo*, 241 U.S. 73, 77, 36 S.Ct. 508, 510, 60 L.Ed. 897 (1916) (dictum); *United States v. Newsom*, 9 F.3d 337 (4th Cir. 1993). Accordingly, for crimes which take place in more than one district, Congress enacted a special venue statute which states:

[a]ny offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in

■ Unfortunately, neither the Constitution nor criminal rule 18 provides help in determining where a crime is committed. Although Congress has particularly designated venue for many crimes by including venue provisions in the proscribing statutes, 18 U.S.C. § 228 contains no such provision.[4] When, as in this case, Congress is not explicit regarding venue, the "situs of the crime must be determined from the nature of the crime alleged and the location of the act or acts constituting it." *United States v. Newsom,* 9 F.3d 337, 338 (4th Cir.1993) (*quoting United States v. Anderson,* 328 U.S. 699, 703, 66 S.Ct. 1213, 1216, 90 L.Ed. 1529 (1946) (internal quotations omitted)). In evaluating the nature of the crime and the location of the acts constituting it, the court should consider the actual verbs in the statute and also the purpose of the statute, commonly found in its legislative history. *See United States v. Cofield,* 11 F.3d 413, 416–17 (4th Cir.1993) (discussing the "dual approach"); *United States v. Newsom,* 9 F.3d 337, 339 (4th Cir.1993); *United States v. Billups,* 692 F.2d 320, 332–33 (4th Cir.1982); *United States v. Kibler,* 667 F.2d 452, 454 (4th Cir.1982). The court turns first to the actual verbs in the CSRA and then to statute's underlying purpose.

■ The crime in this case is the willful failure to pay a past due support obligation with respect to a child who resides in another state. 18 U.S.C. § 228(a). The operative verb phrase in the statute is "willfully fails to pay." The crime is not an act *per se,* rather a failure to act. It is a generally established rule that "where the crime charged is a failure to do a legally required act, the place fixed for its performance fixes the situs of the crime." *Johnston v. United States,* 351 U.S. 215, 220, 76 S.Ct. 739, 742, 100 L.Ed. 1097 (1956). The Supreme Court has stated,

regarding failure to file cases, "[w]hen a place is explicitly designated where a paper must be filed, a prosecution for failure to file lies only at that place." *Travis v. United States,* 364 U.S. 631, 636, 81 S.Ct. 358, 362, 5 L.Ed.2d 340 (1961) (*citing United States v. Lombardo,* 241 U.S. 73, 76–78, 36 S.Ct. 508, 509–10, 60 L.Ed. 897 (1916)). The general rule has been applied in cases involving the failure to file an immigration statement, *United States v. Lombardo,* 241 U.S. 73, 36 S.Ct. 508, 60 L.Ed. 897 (1916), the failure to report for draft related civil service, *Johnston v. United States,* 351 U.S. 215, 76 S.Ct. 739, 100 L.Ed. 1097 (1956), the failure to report to prison, *United States v. Overaker,* 766 F.2d 1326 (9th Cir.1985), the failure to appear after release on bond, *Zerilli v. United States,* 706 F.2d 877 (8th Cir.1983), the failure to file income tax returns, *United States v. Clines,* 958 F.2d 578 (4th Cir.1992); *United States v. Garman,* 748 F.2d 218 (4th Cir.1984), and the failure to pay special taxes, *Evans v. United States,* 349 F.2d 653 (5th Cir.1965). In each such case, there has been a specific mandated place of performance with venue in that district. In *United States v. Garman,* for example, the defendant failed to file income tax returns. 748 F.2d at 219. The Court of Appeals for the Fourth Circuit looked at the statute itself and the corresponding Internal Revenue Service regulations that designated the places where the defendant was to file. *Id.* at 219–21. Venue was proper in those fixed places. Likewise, in the other failure to act cases, each defendant was required to perform the act in a clearly designated place known to him, with venue proper in that district.

The general rule regarding venue in "failure to act" cases counsels against venue in this district. *Johnston* instructs that the place fixed for performance should be the

---

which such offense was begun, continued, or completed.
18 U.S.C. § 3237.

4. Additionally, it appears that proper venue under 18 U.S.C. § 228 is a question of first impression. None of the published opinions dealing with the CSRA have addressed objections to venue. *See Knight v. United States,* No. 93–35604, 1993 WL 501578 (9th Cir. Dec. 3, 1993); *United States v. Nichols,* 928 F.Supp. 302 (S.D.N.Y. 1996); *United States v. Collins,* 921 F.Supp. 1028

(W.D.N.Y.1996); *United States v. Kegel,* 916 F.Supp. 1233 (M.D.Fla.1996); *United States v. Parker,* 911 F.Supp. 830 (E.D.Pa.1995); *United States v. Schroeder,* 912 F.Supp. 1240 (D.Ariz. 1995); *United States v. Mussari,* 912 F.Supp. 1248 (D.Ariz.1995); *United States v. Sage,* 906 F.Supp. 84 (D.Conn.1995); *United States v. Bailey,* 902 F.Supp. 727 (W.D.Tex.1995); *United States v. Hopper,* 899 F.Supp. 389 (S.D.Ind. 1995); *United States v. Hampshire,* 892 F.Supp. 1327 (D.Kan.1995).

venue for prosecution. *Johnston,* 351 U.S. at 220, 76 S.Ct. at 742. The place fixed for Murphy's payment of child support in this case was not in the Western District of Virginia where he was prosecuted. Although Linda and Erin Murphy lived in Virginia, the place fixed for Murphy's performance was in Texas. The Texas order directed Murphy to make payment to the Attorney General of the State of Texas, who would then distribute the funds. Thus, Texas was the site fixed for performance for venue purposes. Based on the verbs in § 228, it would appear, therefore, that venue is not proper in this district, because Virginia was not the site fixed for performance. However, the court is also required to look at the purpose of the statute and any impact it may have on the venue determination. The court now turns to that inquiry.

 Congress passed the CSRA in 1992 in an effort to "address[ ] the problem of interstate enforcement of child support by taking the incentive out of moving interstate to avoid payment." **H.R.Rep. No.** 102–771, 102d Cong., 2d Sess. (1992). President Bush, upon signing the CSRA into law, declared that it represented "a positive and significant step in holding irresponsible, deadbeat parents accountable to those who depend on them financially." 28 **Weekly Comp.Pres. Doc.** 2122 (Nov. 2, 1992). The legislative history suggests that the statute was aimed at parents who moved out of state to avoid making support payments. In this case, however, Murphy did not move away from Virginia to avoid making payments, on the contrary he never lived in Virginia. The finding that venue lies in Virginia, despite the fact that Murphy never lived in Virginia, did not move from Virginia to escape support payments, and was neither ordered to make payments in Virginia nor ordered by a Virginia court to make payments, represents a substantial departure from traditional venue principles. If venue were proper in Virginia merely by virtue of the fact that Linda and Erin Murphy have moved here, it would be proper in each and every district where they might happen to move, from Alaska to Puerto Rico. Venue would become an impermissibly moving target. To affix venue in any jurisdiction where the child happens to be

present when support payments are not made would contravene the historic policy considerations of the statutory and constitutional venue provisions. Venue cannot be that unpredictable. CSRA's legislative background does not support venue in Virginia.

## III.

By all accounts, Murphy has shirked financial responsibility for his daughter. He is accountable both to his daughter and to the United States. However, as a criminal defendant with statutory and constitutional venue rights, Murphy should not have been prosecuted in this district because venue does not lie here. The situs of the crime of willful failure to pay past due child support was not in Virginia, as Murphy was not directed to make those payments here. The court expresses no opinion on the constitutionality of the CSRA or its consistency with the Commerce Clause. The judgment of the United States Magistrate is **VACATED** and the case is **REMANDED** with instructions to dismiss for improper venue.

It is so ordered.