**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellant,

v.                                                    No. 96-4628

JAMES DENNIS MURPHY, JR.,
Defendant-Appellee.

Appeal from the United States District Court
for the Western District of Virginia, at Roanoke.
Samuel G. Wilson, Chief District Judge.
(CR-95-96-R)

Argued: May 5, 1997

Decided: June 26, 1997

Before WILKINSON, Chief Judge, and RUSSELL and
WILLIAMS, Circuit Judges.

_____

Reversed and remanded by published opinion. Chief Judge Wilkinson
wrote the majority opinion, in which Judge Russell and Judge Wil-
liams joined. Judge Williams wrote a concurring opinion.

_____

**COUNSEL**

**ARGUED:** Daniel Steven Goodman, Criminal Division, Appellate
Section, UNITED STATES DEPARTMENT OF JUSTICE, Washing-
ton, D.C., for Appellant. William H. Cleaveland, RIDER, THOMAS,
CLEAVELAND, FERRIS & EAKIN, Roanoke, Virginia, for Appel-
lee. **ON BRIEF:** Robert P. Crouch, Jr., United States Attorney, Julie

C. Dudley, Assistant United States Attorney, Criminal Division, Appellate Section, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellant.

_____

**OPINION**

WILKINSON, Chief Judge:

James Dennis Murphy was convicted before a magistrate judge in the Western District of Virginia for willful failure to pay child support in violation of the Child Support Recovery Act of 1992 ("CSRA"), see 18 U.S.C. § 228. Murphy appealed his conviction to the district court, contending that he had been tried in an improper venue. The district court agreed, and ordered that the case against Murphy be dismissed. Murphy v. United States, 934 F. Supp. 736 (W.D. Va. 1996). The United States appeals, arguing that both the language of 18 U.S.C. § 228 and the policies underlying the CSRA support the conclusion that the Western District of Virginia, the residence of Murphy's daughter, was a proper venue for Murphy's prosecution. We agree, and accordingly reverse the judgment of the district court.

I.

Linda Troutt Murphy ("Linda Murphy") and James Dennis Murphy ("Murphy") divorced on April 15, 1985, in Oklahoma City, Oklahoma. Linda Murphy retained custody of the couple's four-year-old daughter Erin. Pursuant to the Oklahoma divorce decree, Murphy was obligated to pay $100 per month in child support. Shortly after the divorce, both parents moved from Oklahoma -- Murphy to Texas, and Linda Murphy to Roanoke, Virginia where she and Erin still reside.

Murphy failed to pay support as required by the divorce decree. Consequently, in 1988, Linda Murphy contacted the Roanoke office of the Virginia Department of Social Services, Division of Child Support Enforcement ("Virginia DCSE"), seeking assistance in recovering the support payments and increasing their amount. After confirming Dennis Murphy's address in Burleson, Texas, the Virginia

2

DCSE requested that Texas take action under the Uniform Reciprocal Enforcement Support Act ("URESA"). In response, the Texas Attorney General filed a URESA action against Murphy on behalf of Virginia and Linda Murphy. The case was captioned,"The Attorney General of Texas ex rel. State of Virginia and Linda Troutt Murphy, Petitioner, vs. James Dennis Murphy, Jr., Respondent."

In July 1990, the Texas court found that Murphy owed"the State of Virginia and/or petitioner" past due child support. The court ordered Murphy to make semimonthly payments of $112.00 to the Johnson County Child Support Office in Cleburne, Texas. The order clearly stated that the payments were for "disbursement to the Central Registry for Child Support of the initiating State," i.e., Virginia.

Pursuant to the order of the Texas court, Murphy's employer, the Smith County Sheriff's Department, withheld Murphy's child support payments from his paychecks. However, in 1991, Murphy left his job in Texas and ceased to make child support payments after July of that year. Sometime later, Murphy called his former wife from Florida, informing her that he had moved there and was working as a dog trainer.

The Virginia DCSE was able to determine that Murphy was in fact working in Jacksonville, Florida, and it attempted to initiate another URESA action there on March 3, 1992. Murphy, however, left his Jacksonville address before the Florida court was able to act on the petition. Thereafter, the Virginia DCSE made numerous attempts to track down Murphy and collect child support payments, but was unsuccessful due to Murphy's pattern of frequent relocation.

By January 1, 1993, Murphy owed nearly $6,000 in back child support, and on August 1, 1994, the Virginia DCSE placed him on Virginia's "Ten Most Wanted" list of parents who had failed to pay child support. At this time, Murphy was living in New York. There, a journalist contacted Murphy, seeking to question him about his placement on the "Ten Most Wanted" list. After this incident, Murphy contacted the Virginia DCSE, which informed him that his case had been referred to the United States Attorney for criminal prosecution. However, the Virginia DCSE indicated that it would advise the U.S. Attor-

3

ney's office not to take further action if Murphy promptly began to make payments.

Despite this warning, Murphy continued to avoid his child support obligations. As a result, on December 28, 1994, the U.S. Attorney filed a criminal complaint and arrest warrant for Murphy in the United States District Court for the Western District of Virginia. Meanwhile, Murphy had moved back to Florida, where he was arrested in January 1995.

On May 22, 1995, Murphy was tried for violations of the CSRA in the United States District Court for the Western District of Virginia. Prior to the bench trial before the magistrate, Murphy's counsel objected that the case was being tried in an improper venue. The magistrate judge rejected this objection and found Murphy guilty of willfully refusing to make child support payments. See 18 U.S.C. § 228. Murphy was sentenced to five years probation, subject to the condition that he make all required child support payments.

Murphy appealed the magistrate's decision to the district court. The district court agreed with Murphy that venue was improper in the Western District of Virginia, "[b]ecause Murphy was directed to pay the child support in Texas and was never ordered to make payments in Virginia." Murphy, 934 F. Supp. at 738. The district court remanded the case to the magistrate with instructions to dismiss for improper venue. Id. at 740. The United States appeals.

II.

The United States Constitution guarantees an accused the right to be tried where a crime was committed. U.S. Const. art. III, § 2, cl. 3. The Sixth Amendment further directs that criminal defendants have a right to be tried in "the State and district wherein the crime shall have been committed." U.S. Const. amend. VI. These constitutional commands are reflected in Fed. R. Crim. P. 18, which provides that "[e]xcept as otherwise permitted by statute or by these rules, the prosecution shall be had in a district in which the offense was committed."

However, as Murphy concedes, and as our precedent clearly holds, "[t]he Constitution does not limit venue to a single district." United

4

States v. Newsom, 9 F.3d 337, 338 (4th Cir. 1993) (citing United States v. Lombardo, 241 U.S. 73, 77 (1916)). Rather, it "requires only that venue be determined from the nature of the crime and the location of the acts constituting it." United States v. Cofield, 11 F.3d 413, 419 (4th Cir. 1993). Where, as in this instance, Congress has not provided an express venue provision in conjunction with a criminal statute, this circuit has looked to the verbs defining the criminal offense and the purpose underlying the criminal statute to determine proper venue. Cofield, 11 F.3d at 417; Newsom , 9 F.3d at 339.

A.

Murphy's contention throughout has been that a prosecution brought in the Western District of Virginia would violate both Rule 18 and the constitutional guarantees it was designed to implement. Murphy was accused of violating the CSRA, which makes "willfully fail[ing] to pay a past due support obligation with respect to a child who resides in another State" a federal crime. 18 U.S.C. § 228(a). He argues that since the offense in this case is "failure to pay," it can occur only in the state where the payment originated or in the state to whose court order he was subject. Thus, he concludes that venue would be limited to Florida -- the state from which he failed to pay child support, and Texas -- the state to which he was required to make support payments pursuant to court order.

Murphy's contention, however, ignores the statute's use of the verb "resides," which clarifies that the failure to pay is with respect to a "child who resides in another state." It also ignores the fact that both of the statute's verbs clearly indicate that the duty to pay runs to the defendant's child. Murphy "failed to pay" the child support with respect to his child, and the person who "resides" in another state is also his child. Thus, the language of the statute strongly supports the conclusion that the child's residence is a proper venue for prosecution under 18 U.S.C. § 228. At best, Murphy's argument supports the conclusion that the situs of his crime was not limited to a single venue. However, this circuit has already recognized that a failure to pay or a failure to file can often occur in more than one location. See United States v. Garman, 748 F.2d 218, 221 (4th Cir. 1984) (willful failure to file tax return was "a crime committed in more than one district").

5

Murphy's reliance on other "failure to act" cases in support of his position is misplaced. Those cases are not on point because they involve situations in which there are only two possible venues, one in which the defendant is located, and the other in which the defendant was to complete the performance of a legal obligation. For example, in Johnston v. United States, 351 U.S. 215 (1956), the Supreme Court addressed the issue of venue where defendant conscientious objectors failed to obey orders to report for civilian work in various districts. The Court held that "the venue of these violations . . . lies in the district where the civilian work was to be performed." Id. at 220.

Venue considerations are quite different where, as here, the action at issue is payment to an intermediary whose function is to forward the payment to a third party. The facts in United States v. Blecker, 657 F.2d 629 (4th Cir. 1981), for example, are much closer to the situation at hand than those in Johnston. In Blecker, the defendant was convicted of mail fraud and presenting false claims to the United States. The defendant had prepared the claims in one district, submitted them to a private intermediary in another district, whereupon the intermediary paid the claims and submitted them for reimbursement to a government agency in a third district. We held that venue was appropriate in all three districts: where the false claims were prepared; where the intermediary had transmitted the claims for reimbursement; and where the claims were actually received by the government. Id. at 632-33. Likewise, in Garman, we held that in a prosecution for a willful failure to file an income tax return, venue was proper either in the District of Maryland, where the defendant could have filed, or in the Eastern District of Pennsylvania, where the return eventually would have been processed if it had been filed in Maryland. 748 F.2d at 220-21.

Factually, this case is analogous to the situations we confronted in Blecker and Garman. Texas merely served as an intermediate collection point for payment of child support which would be forwarded to Virginia. As the statute clearly indicates, Murphy's"failure to pay" was "with respect to a child who resides in" Virginia. 18 U.S.C. § 228. The Texas court order reflects the operative statutory verbs, noting that "the State of Virginia and/or Petitioner is entitled to a judgment for the amount of unpaid court-ordered child support," and

6

that Murphy's payments were for "disbursement to the Central Registry for Child Support of" Virginia. The fact that Texas served as a collection point for Murphy's child support payments simply does not support the conclusion that venue is improper in the district for which those payments were ultimately destined -- the Western District of Virginia.

B.

Murphy's argument also overlooks the fact that this circuit has consistently held that proper venue must promote the aims of a criminal statute, not eviscerate them. Cofield, 11 F.3d at 417 (proper venue should promote legislative purpose); Newsom, 9 F.3d at 339 (same). Meeting parental responsibilities is what the CSRA is all about. Congress enacted this statute to address "the problem of interstate enforcement of child support by taking the incentive out of moving interstate to avoid payment." H.R. Rep. No. 771, 102d Cong., 2d Sess. 6 (1992). Limiting venue to the state where the order commanding payment was entered or to the state where the delinquent parent resides would do nothing but frustrate Congress' intention in passing this Act.

We need look no farther than this case for an example. While we do not reject Texas as a permissible venue here, it would be especially troublesome to limit venue to that state as suggested by the district court. Murphy, 934 F. Supp. at 740. Neither Murphy himself, his former wife, his daughter, nor the social workers involved in the case lived in Texas at the time of the criminal prosecution. The enforcement of the CSRA would be much more burdensome if all these witnesses were forced to travel to Texas as Murphy suggests. The main witnesses, Linda Murphy and the social workers who assisted her, are all Virginia residents. Bringing noncompliant parents to account is facilitated if venue lies where nonpayment has its main effect -- in Virginia, the residence of the child. See United States v. Billups, 692 F.2d 320, 332 (4th Cir. 1982) ("The protected interest is in Virginia . . . and other basic venue considerations must flow from that reality."). If we were to adopt Murphy's position, we would only encourage delinquent parents to follow Murphy's itinerant pattern to avoid obligations to their children and the legal consequences of their acts.

7

Murphy, however, contends that these considerations are irrelevant. He argues that finding venue in the district where the child resides would permit the guardian of the child to move the child from venue to venue, thus creating a "moving target" which would allow for a criminal prosecution anywhere in the country. He concludes that such a rule would vitiate the Constitution's safeguard against the unfairness and hardship of facing criminal charges in distant and unexpected locations.

Murphy's concern is not well-founded. Murphy was not dealing with a phantom family. He was fully aware that his daughter resided in Virginia, and in fact contacted his ex-wife and daughter there repeatedly. He was further aware of an enforceable court order directing that child support payments be forwarded from Texas to Erin's residence in Virginia. Indeed, Murphy's objection is particularly problematic considering that it was Murphy himself who created a "moving target" by fleeing from location to location to avoid his obligations to his daughter, whose residence has remained fixed throughout in the Western District of Virginia.

III.

For the foregoing reasons, the judgment of the district court is reversed, and the case is remanded for reinstatement of Murphy's conviction.

REVERSED AND REMANDED

WILLIAMS, Circuit Judge, concurring:

I agree with the majority's conclusion that venue is proper in the Western District of Virginia. However, because this case raises an important issue of first impression in the federal courts,* I write separately to express my view on two points. First, under the CSRA venue does not lie wherever the child resides. Rather, venue is proper here

_____

*The United States Court of Appeals for the Eighth Circuit is currently considering this issue. See United States v. Crawford, No. 96-2808 (8th Cir.) (argued Nov. 18, 1996) (determining whether venue is proper in the district where the child resided).

8

because the Western District of Virginia is the place where the child support payments are designated for disbursement. Second, despite suggestions to the contrary in our precedent, legislative purpose should not be allowed to circumvent the constitutional requirement that venue lies where the crime is committed.

I.

I do not read the majority opinion as stating that venue is proper under the CSRA wherever the child resides. Here, Murphy was charged with "willfully fail[ing] to pay a past due support obligation with respect to a child in another state." 18 U.S.C.A. § 228(a). Willfully failing to pay is not an act, rather it is a failure to act. It is well established that "where the crime charged is a failure to do a legally required act, the place fixed for its performance fixes the situs of the crime." Johnston v. United States, 351 U.S. 215, 220 (1956).

The 1990 Texas court order requiring Murphy to pay child support clearly stated that Murphy owed the past due child support to "the State of Virginia and/or petitioner." Because the payments were for "disbursement to the Central Registry for Child Support of the initiating State," Virginia was the ultimate place fixed for Murphy's performance. For this reason, the Western District of Virginia was a proper venue for Murphy's prosecution.

II.

As the majority opinion correctly notes, the United States Constitution guarantees an accused the right to be tried where the crime is committed. See U.S. Const. art. III, § 2, cl. 3 (requiring that the "the trial of all Crimes . . . shall be held in the State where the said crimes shall have been committed"); U.S. Const. amend. VI (requiring that the trial of all crimes shall be held in the "State and district wherein the crime shall have been committed"). The Constitution, however, does not provide any help in determining where a crime is committed. That determination must be made "from the nature of the crime alleged and the location of the act or acts constituting it." United States v. Anderson, 328 U.S. 699, 703 (1946); see also Travis v. United States, 364 U.S. 631, 635-37 (1961).

9

In United States v. Cofield, 11 F.3d 413 (4th Cir. 1993), we stated that "the nature of the crime alleged" could be determined by "look[ing] at the purpose of the statute as evidenced by its legislative history." Id. at 416. Our analysis in Cofield was based, I believe, on a misreading of the Supreme Court's directive in Anderson. Although we must consider "the nature of the crime alleged" in determining venue, I believe that this phrase requires an exhaustive inquiry into the precise conduct proscribed by Congress rather than a dubious inquiry into the purpose of the statute as evidenced by its legislative history. Otherwise, legislative purpose could be used to circumvent the constitutional requirement that venue lie where the crime is committed. For example, venue could be improperly fixed for the convenience of the prosecution or the accused. See Johnston, 351 U.S. at 220-21 (noting that because the Constitution fixes venue in the place where the crime was committed, any "variation from that rule for [the] convenience of the prosecution or the accused is not justified"). Proper venue analysis should consider congressional purpose only to the extent it was actually given effect in the statutory text.

10