# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 96-2808

_____

United States of America,                          *
                                                   *
                        Appellee,                  *
                                                   *  Appeal from the United States
          v.                                       *  District Court for the
                                                   *  Eastern District of Missouri
Lynn Truman Crawford,                              *
                                                   *
                        Appellant.                 *
                              _____

Submitted: November 18, 1996

Filed:    June 23, 1997
                              _____

Before McMILLIAN, Circuit Judge, HENLEY, Senior Circuit Judge, and MORRIS
     SHEPPARD ARNOLD, Circuit Judge.
                              _____

McMILLIAN, Circuit Judge.


        Lynn Truman Crawford appeals from a final judgment entered in the United
States District Court[1] for the Eastern District of Missouri, following a bench trial,
finding him guilty on one count of violating the Child Support Recovery Act of 1992

_____

    [1]The Honorable George F. Gunn, Jr., United States District Judge for the Eastern
District of Missouri.

(CSRA), 18 U.S.C. § 228, and sentencing him to six months imprisonment and ordering him to pay a special assessment of $25.00 and restitution in the amount of $91,547.14 plus post-judgment interest. United States v. Crawford, No. 4:96CR42 (E.D. Mo. July 2, 1996) (judgment). For reversal, Crawford argues that the district court erred in denying his motion to dismiss the indictment on grounds that: (1) the CSRA exceeds Congress's regulatory powers under the commerce clause; (2) the CSRA violates the Tenth Amendment; (3) his rights under the ex post facto clause have been violated; and (4) venue in the Eastern District of Missouri is improper. In addition, Crawford argues that the evidence at trial was insufficient to support his conviction. For the reasons discussed below, we affirm.

**Background**

The underlying facts are not in dispute. Crawford, a physician who specializes in emergency medicine, married Mona Tague on September 1, 1984, in the state of Missouri. Shortly thereafter, the couple moved to Texas. While in Texas, they had two daughters, born in 1985 and 1986. The couple separated in February 1988, and Tague retained custody of the two children.

On March 23, 1988, a Texas state court issued a temporary order which required Crawford to make payments of $1000 per month in child support, to be paid through the Dallas County Child Support Office in Dallas, Texas. Crawford made the monthly payments until November 1988, when he terminated the payments. One year later, in November 1989, the Texas state court found that Crawford owed over $12,000 in child support and held him in contempt. The following year, in November 1990, the Texas state court issued a final divorce decree, which confirmed Crawford's monthly child support obligation.

Meanwhile, Tague and the two children had moved from Texas to Missouri, where they have resided ever since. From the time of the couple's separation until

Crawford's arrest in February 1996, Crawford continued to reside in Texas and Louisiana and had no significant contact with the state of Missouri. In that time period, he earned at least $230,000.

On February 15, 1996, Crawford was indicted in the Eastern District of Missouri on one count of violating the CSRA[2] from October 31, 1992, through February 14, 1996.[3] A warrant was issued for his arrest. On February 26, 1996, Crawford was arrested in Louisiana, and his initial appearance was held in United States District Court for the Western District of Louisiana. The same day, Crawford filed in the Western District of Louisiana a motion to dismiss the indictment, arguing, among other things, that the CSRA is unconstitutional under the commerce clause and the Tenth Amendment, that his rights under the ex post facto clause were being

---

[2]The CSRA provides in pertinent parts:

> Whoever willfully fails to pay a past due support obligation with respect to a child who resides in another State shall be punished as provided in subsection (b).
>
> . . . .
>
> As used in this section--
>
> (1) the term "past due support obligation" means any amount--
>> (A) determined under a court order or an order of an administrative process pursuant to the law of a State to be due from a person for the support and maintenance of a child or of a child and the parent with whom the child is living; and
>> (B) that has remained unpaid for a period longer than one year, or is greater than $5,000.

18 U.S.C. § 228(a),(d).

[3]The CSRA became effective on October 25, 1992.

violated, and that venue was improper in the Eastern District of Missouri. He also filed a motion to transfer the case from the Eastern District of Missouri to the Western District of Louisiana. On February 28, 1996, following a detention hearing in the Western District of Louisiana, Crawford was ordered detained without bond. The Louisiana district court did not rule on Crawford's pending motions. Thereafter, before the Eastern District of Missouri, Crawford withdrew his motion to transfer the case to the Western District of Louisiana. Crawford's outstanding motion to dismiss the indictment was assigned to a magistrate judge[4] in the Eastern District of Missouri for a report and recommendation.

The magistrate judge held an evidentiary hearing and thereafter recommended denial of Crawford's motion to dismiss the indictment. Id. (Apr. 26, 1996) (report and recommendation). The district court adopted the magistrate judge's report and recommendation and, accordingly, denied the motion. Id. (May 30, 1996) (order). The case proceeded to trial. Following a one-day bench trial, the district court found Crawford guilty on one count of violating the CSRA (the only count in the indictment). Crawford was sentenced to six months imprisonment and ordered to pay a special assessment of $25.00 and restitution in the amount of $91,547.14 plus interest.[5] Id. (July 2, 1996) (judgment). This appeal followed.

---

[4]The Honorable Thomas C. Mummert, III, United States Magistrate Judge for the Eastern District of Missouri.

[5]The government apparently made no recommendation regarding the amount of restitution.

## Discussion

Commerce clause

Crawford first argues that Congress, in enacting the CSRA, exceeded its power "to regulate Commerce . . . among the several States," as granted under the commerce clause of the United States Constitution. U.S. Const. art. I, § 8, cl. 3. Crawford maintains, and we agree, that analysis of this constitutional issue is governed by United States v. Lopez, 514 U.S. 549, ___, 115 S. Ct. 1624, 1629-30 (1995) (Lopez), in which the Supreme Court identified and discussed three broad categories of permissible regulation under Congress's commerce power: (1) regulation of the use of channels of interstate commerce; (2) regulation and protection of the instrumentalities of interstate commerce, or persons or things in interstate commerce; and (3) regulation of activities having a substantial relation to interstate commerce.

Crawford maintains that the CSRA does not fit within any of these categories. Crawford argues that the payment of child support is incidental to divorce and entirely unrelated to interstate commerce. He contends "[t]he only nexus to interstate commerce in this case is the fact that the parties reside in different states"; that, he argues, is "not sufficient to confer federal jurisdiction and should not be held synonymous with 'interstate commerce.'" Brief for Appellant at 7. Crawford additionally argues that the enforcement of the CSRA in the present case is particularly onerous because it was his former wife (the custodial parent), not he, who moved out of state and created the circumstances permitting application of the CSRA. We disagree.

We review questions involving the constitutionality of a federal statute de novo. United States v. McMasters, 90 F.3d 1394, 1397 (8th Cir. 1996), cert. denied, 117 S. Ct. 718 (1997). Upon de novo review, we conclude that the CSRA is not an unconstitutional exercise of Congress's regulatory powers under the commerce clause.

Accord United States v. Johnson, No. 96-4323, 1997 WL 283447, at *2-3 (4th Cir. May 30, 1997) (Johnson); United States v. Parker, 108 F.3d 28, 29-31 (3d Cir. 1997) (Parker); United States v. Bongiorno, 106 F.3d 1027, 1030-33 (1st Cir. 1997) (Bongiorno); United States v. Hampshire, 95 F.3d 999, 1001-04 (10th Cir. 1996) (Hampshire), cert. denied, 117 S. Ct. 753 (1997); United States v. Mussari, 95 F.3d 787, 790-91 (9th Cir. 1996) (Mussari), cert. denied, 117 S. Ct. 1567 (1997); United States v. Sage, 92 F.3d 101, 104-07 (2d Cir. 1996) (Sage), cert. denied, 117 S. Ct. 784 (1997). Contrary to Crawford's contentions, the constitutionality of the CSRA under the commerce clause does not rely solely upon the fact that, in each instance, the parent-defendant and the child-victim reside in different states. A payment of child support on behalf of an out-of-state child is, by definition, a type of transaction in which money must cross state lines and, moreover, the money must change hands outside of a single household. Such payments, or the debts resulting from nonpayment, are things in, or having a substantial relation to, interstate commerce. We therefore conclude that enactment of the CSRA was a constitutional exercise of Congress's commerce power within either the second or the third category of regulations recognized in Lopez. As the Supreme Court observed in Wickard v. Filburn, 317 U.S. 111, 127-28 (1942) (Wickard), although one's contribution to interstate commerce may be "trivial by itself," that will not remove his or her activities from the scope of federal regulation where that contribution, "taken together with that of many others similarly situated, is far from trivial."[6] Cf. Lopez, 514 U.S. at ___, 115 S. Ct. at 1630-33 (holding that the activity being regulated by the Gun Free School Zones Act of 1990 (i.e., knowing possession of a firearm in a school zone) did not substantially affect interstate commerce, even when viewed in the aggregate). Furthermore, payment of child support on behalf of an out-of-state child requires the use of channels of interstate commerce, which renders

_____

[6]For similar reasons, we agree with the magistrate judge's analysis in which he concluded that the CSRA fits within the third Lopez category and therefore does not violate the commerce clause. United States v. Crawford, No. 4:96CR42, slip op. at 6-9 (E.D. Mo. Apr. 26, 1996) (magistrate judge's report and recommendation).

the CSRA constitutional under the first <u>Lopez</u> category as well.  Finally, Congress's power to regulate such activities is not precluded merely where, as here, the child moved away while the parent-defendant remained in the same location at all relevant times.  The constitutionality of the CSRA is based upon the relationship between the regulated activity and interstate commerce, irrespective of the fact that the parent-defendant's own performance, or nonperformance, has remained locally confined.  <u>See, e.g.</u>, <u>Wickard</u>, 317 U.S. at 125 ("even if appellee's activity be local and though it may not be regarded as commerce, it may still, whatever its nature, be reached by Congress if it exerts a substantial economic effect on interstate commerce") (quoted in <u>Lopez</u>, 514 U.S. at ___, 115 S. Ct. at 1628).[7]  Accordingly, we hold that the district court did not err in denying Crawford's motion to dismiss the indictment on the ground that the CSRA is an unconstitutional exercise of Congress's commerce power.

<u>Tenth Amendment and abstention doctrines</u>

Crawford also contends that the CSRA runs afoul of the Tenth Amendment's declaration that "powers not delegated to the United States by the Constitution, nor

---

[7]In <u>United States v. Mussari</u>, 95 F.3d 787, 790-91 (9th Cir. 1996), <u>cert. denied</u>, 117 S. Ct. 1567 (1997), the Ninth Circuit rejected a similar hypothetical argument as follows:

> It is objected that the statute could come into play by the child moving out of state rather than the parent doing so.  This hypothetical will not support a facial challenge to the statute as it is applied in this case. But if the hypothetical is entertained, it constitutes no objection to the constitutionality of the statute.  It doesn't matter whether the interstate character of the transaction is created by the parent or the child.  What matters is that an obligation, already imposed by state law, comes to wear an interstate face.  Then, and only then, does the CSRA intervene and forbid frustration of the obligation's satisfaction.

prohibited by it to the States, are reserved to the States respectively, or to the people." U.S. Const. amend. X.  Crawford defines this issue as "[w]hether the district court erred in failing to find that [the CSRA] violated the Tenth Amendment principles of federalism and comity pursuant to the 'Younger[8] abstention doctrine' and the 'domestic relations exception.'"  Brief for Appellant at 23-24.  In other words, he is urging this court either to hold the CSRA unconstitutional under the Tenth Amendment or to abstain from enforcing it based upon principles of federalism and comity because the CSRA interferes with the states' traditional sovereignty over matters involving domestic relations and enforcement of their criminal laws.  We decline to do so.

The Tenth Amendment reserves for the states or the people those powers not delegated to the United States by the Constitution.  In New York v. United States, 505 U.S. 144, 156 (1992), the Supreme Court explained "[i]f a power is delegated to Congress in the Constitution, the Tenth Amendment expressly disclaims any reservation of that power to the States."  As we have already held, Congress exercised an enumerated power under the commerce clause when it enacted the CSRA. Therefore, upon de novo review, we conclude that the CSRA does not run afoul of the Tenth Amendment.  Accord Johnson, 1997 WL 283447, at *3-5; Parker, 108 F.3d at 31; Bongiorno, 106 F.3d at 1033-34; Hampshire, 95 F.3d at 1004; Mussari, 95 F.3d at 791; Sage, 92 F.3d at 107.  Thus, we hold that the district court did not err in denying Crawford's motion to dismiss the indictment on the ground that the CSRA violates the Tenth Amendment.

To the extent Crawford suggests that the CSRA interferes with the states' traditional sovereignty over domestic relations and enforcement of their criminal laws, we agree with the government's counter-argument that the CSRA in no way *interferes* with state laws or judicial proceedings.  The CSRA does not regulate domestic relations but, rather, serves to assist the states in enforcing their judgments and orders.

---

[8]Younger v. Harris, 401 U.S. 37 (1971).

"The [CSRA] accepts the validity of the State court judgment and the family policies that judgment embodies. It seeks merely to implement those State policies when the parent and the child live in different States and the judgment has been willfully flouted." Sage, 92 F.3d at 107. Moreover, Crawford's reliance upon the "domestic relations exception" is misplaced. In Ankenbrandt v. Richards, 504 U.S. 689, 701-04 (1992), the Supreme Court reaffirmed the validity of the "domestic relations exception" in diversity cases, but specifically limited application of that exception to divorce and alimony decrees and child custody orders. That exception is irrelevant to federal prosecutions under the CSRA because the district courts' jurisdiction in such cases does not rest upon diversity, but rather is based upon 18 U.S.C. § 3231 ("The district courts of the United States shall have original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States."). Furthermore, the policies underlying the domestic relations exception do not support abstention in CSRA prosecutions because, as noted above, the CSRA is designed to enhance enforcement of state laws and decrees. "Respect for the competency of the states in matters of domestic relations is not disparaged but manifested when the states are confronted with interstate impediments to the fulfillment of domestic duties that the courts of the states have imposed, and the states find themselves, if not helpless, at least gravely impaired in pursuing the delinquent debts." Mussari, 95 F.3d at 791. Similarly, contrary to Crawford's argument based upon the Younger abstention doctrine, we discern no interference with the states' abilities to apply and enforce their criminal laws. "[T]he CSRA does not displace any approach taken by the state in addressing the problem of delinquent parents but rather supplements such state initiatives by fortifying law enforcement efforts and existing state penalties." Hampshire, 95 F.3d at 1004. In sum, the district court correctly rejected Crawford's argument that principles of federalism and comity compel abstention. Accord Johnson, 1997 WL 283447, at *3-5 (rejecting substantially the same arguments). We therefore hold that the district court appropriately declined to abstain.

Ex post facto clause

In the present case, the Texas state court initially ordered Crawford to make monthly child support payments in March 1988. Thereafter, Crawford made some payments, but stopped in November 1988. The final divorce decree, confirming his monthly support obligation, was entered in the Texas state court in November 1990. The CSRA became effective October 25, 1992. Crawford was indicted on February 15, 1996, on one count of violating the CSRA from October 31, 1992, through February 14, 1996. At sentencing, he was ordered to pay restitution covering the full amount of child support owed, including amounts that were due prior to the effective date of the CSRA. In light of this history, Crawford advances two arguments to challenge his conviction and sentence as violations of the ex post facto clause, U.S. Const. art. I, § 9, cl. 3. First, he argues that the CSRA may only be used to enforce judicial decrees rendered after October 25, 1992, the effective date of the CSRA, and therefore the district court erred in denying his motion to dismiss the indictment on that basis. Second, and alternatively, he contends that the restitution order imposed at sentencing violates the ex post facto clause insofar as it includes amounts that came due prior to the effective date of the CSRA. We reject both arguments.

Upon de novo review,[9] we hold that the ex post facto clause does not invalidate the government's prosecution of Crawford, even though the CSRA went into effect after Crawford was ordered by the Texas state court to pay child support. The CSRA imposes punishment for the willful failure to pay a past due child support obligation with respect to a child residing in another state.

---

[9]See United States v. Hampshire, 95 F.3d 999, 1005 (10th Cir. 1996), cert. denied, 117 S. Ct. 753 (1997) ("[t]he defendant's ex post facto challenge presents a question of law that we review de novo").

-10-

The ex post facto prohibition forbids the Congress and the States to enact any law "which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed."  Through this prohibition, the Framers sought to assure that legislative Acts give fair warning of their effect and permit individuals to rely on their meaning until explicitly changed.

Weaver v. Graham, 450 U.S. 24, 28 (1981) (footnote and citations omitted).  Clearly, the CSRA, on its face, does not violate the ex post facto clause insofar as it imposes punishment upon a person who, after October 25, 1992, willfully fails to pay a past due child support obligation.  In the present case, the government alleged, and the district court found beyond a reasonable doubt, that Crawford willfully failed to pay past due child support obligations during the time frame charged in the indictment, which post-dated the effective date of the statute.  The CSRA gave Crawford fair warning of its effect should he not pay past due child support obligations after its effective date, and yet he chose not to pay.  Consequently, Crawford's prosecution does not violate the ex post facto clause because he was punished in accordance with the law as it existed at the time of his offense.  See, e.g., United States v. Allen, 886 F.2d 143, 146 (8th Cir. 1989) ("So long as the actual crime for which a defendant is being sentenced occurred after the effective date of the new statute, there is no ex post facto violation.").

We also reject Crawford's alternative challenge to the district court's restitution order, which included in its calculations monthly obligations that accrued before the effective date of the CSRA.[10]  Upon de novo review, we agree with the Tenth Circuit's

[10]We have examined the trial transcript and conclude, contrary to Crawford's assertion, that the government did not "basically stipulate[]" that the district court "[could] not go behind the date of the statute, namely: October 25, 1992 . . . for purposes of ordering restitution."  Brief for Appellant at 34 (citing Trial Transcript, at 11, lines 13-19; 31-35).

conclusion that this argument is legally foreclosed because restitution is not "punishment" within the meaning of the ex post facto clause. Hampshire, 95 F.3d at 1006 (restitution order under CSRA does not implicate the ex post facto clause because it does not inflict punishment but rather seeks to compensate the child for the parent's failure to pay past due support obligations). In any event, the CSRA provides "[u]pon a conviction under this section, the court shall order restitution . . . in an amount equal to the past due support obligation as it exists at the time of sentencing." 18 U.S.C. § 228(c) (emphasis added).[11] Therefore, even if we were to assume that the restitution order is punishment within the meaning of the ex post facto clause, Crawford is not being punished for acts that were innocent at the time they were committed, as discussed above, nor is the punishment greater than that which was authorized at the time the offense occurred. The CSRA gives fair warning that the district court shall order restitution in the full amount due at the time of sentencing. No ex post facto violation has occurred. Accord Hampshire, 95 F.3d at 1006 ("even if we consider restitution to be punishment, there is no ex post facto problem"). In sum, upon consideration of Crawford's ex post facto arguments, we hold that the district court did not err in denying Crawford's motion to dismiss the indictment or in ordering him to pay full restitution.

Venue

Crawford also argues that the district court erred in failing to dismiss the indictment on grounds of improper venue.[12] No federal court of appeals has addressed

---

[11]The definition of "past due support obligation" is separately defined in 18 U.S.C. § 228(d)(1).

[12]Crawford describes this issue as "whether the district court erred in finding that the United States District Court for the Eastern District of Missouri was the proper jurisdiction and/or venue over the person of [Crawford]." Brief for Appellant at 34. However, we confine our discussion to the issue of venue only, as Crawford has not

the issue of whether, in a CSRA case, venue is proper in a district with which the defendant has no connection other than the fact that the child, with respect to whom the defendant owes support, resides there. The only reported case directly addressing such a venue challenge is <u>Murphy v. United States</u>, 934 F. Supp. 736 (W.D. Va. 1996) (<u>Murphy</u>).[13]  In <u>Murphy</u>, the District Court for the Western District of Virginia reviewed a judgment of conviction under the CSRA which had been entered by a magistrate judge,[14] and vacated the judgment on grounds of improper venue. The district court in <u>Murphy</u> reasoned "[t]he operative verb phrase in the statute is 'willfully

---

raised an issue of jurisdiction. The statute to which Crawford refers in his brief, 18 U.S.C. § 3237, is a venue statute. Moreover, to the extent that his arguments are also based upon the Constitution and Fed. R. Crim. P. 18, he is asserting a venue challenge, not a jurisdictional challenge. <u>See, e.g.</u>, <u>United States v. Meade</u>, 110 F.3d 190, 200 (1st Cir. 1997) ("The Constitution and Rule 18 protect a criminal defendant's venue -- not jurisdictional -- rights. . . . [T]he constitutional and statutory venue provisions are not restrictions on the court's jurisdiction.").

[13]The facts in <u>Murphy v. United States</u>, 934 F. Supp. 736, 737-38 (W.D. Va. 1996), were as follows. The defendant and his wife had married in Oklahoma. They lived together in Oklahoma where they had a daughter and then subsequently divorced. In the final divorce decree issued by an Oklahoma state court, the defendant was ordered to make child support payments to the Oklahoma state court. Following the divorce, the defendant's former wife and child moved to Virginia, and the defendant moved to Texas and, later, to Florida. After the defendant's first move to Texas, the child support order was transferred from Oklahoma to Texas pursuant to those states' reciprocity provisions. Accordingly, the defendant was thereafter under orders to make child support payments to the Texas Attorney General. After he moved from Texas to Florida, he was indicted in Virginia, where his former wife and child were living. At that time, he was still required to make payments to the Texas Attorney General even though he was living in Florida. The defendant was tried and found guilty by a United States magistrate judge in the Western District of Virginia, whereupon he appealed to the district court in the Western District of Virginia.

[14]<u>United States v. Murphy</u>, 893 F. Supp. 614 (W.D. Va. 1995), <u>vacated</u>, 934 F. Supp. 736 (W.D. Va. 1996).

fails to pay,'" and therefore the proper place for venue is where the defendant is required to make his or her payments, not the victim's location. 934 F. Supp. at 739. The district court in Murphy also opined "the legislative history [of the CSRA] suggests that the statute was aimed at parents who moved out of state to avoid making support payments." Id. at 740. Thus, the district court concluded, "[t]o affix venue in any jurisdiction where the child happens to be present when support payments are not made would contravene the historic policy considerations of the statutory and constitutional venue provisions. Venue cannot be that unpredictable." Id.[15]

By contrast, in the present case, the magistrate judge concluded that venue was proper in the Eastern District of Missouri because the children, the victims of the offense, reside in that district. The magistrate judge noted that, under federal statutory law, "'[e]xcept as otherwise expressly provided by enactment of Congress, any offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued or completed.'" United States v. Crawford, slip op. at 13 (Apr. 26, 1996) (quoting 18 U.S.C. § 3237). The magistrate judge also noted, as a general rule, that courts are to determine the "locus delicti" from the nature of the crime alleged and the location of the acts constituting it. Id. (quoting Travis v. United States, 364 U.S. 631, 635 (1961) (Travis)). The magistrate judge then reasoned: "[t]he venue requirement is as to the location of the offense and not the 'personal presence' of the defendant. . . . [V]enue in the instant case is proper in the Eastern District of Missouri." Id. at 14 (citation omitted).

_____

[15]Following the district court's dismissal in Murphy v. United States, 934 F. Supp. 736 (W.D. Va. 1996), the government did not appeal to the Fourth Circuit. Since then, the Fourth Circuit has decided United States v. Johnson, No. 96-4323, 1997 WL 283447 (4th Cir. May 30, 1997) (Johnson), affirming a conviction under the CSRA on grounds that the CSRA does not violate the commerce clause or the Tenth Amendment; however, venue was not at issue in Johnson.

Crawford argues on appeal that his venue rights have been violated because he has not begun, continued, or completed any offense in the Eastern District of Missouri, as all of his relevant acts (or omissions, as the case may be) occurred in Texas or Louisiana. He highlights the undisputed facts that: at all relevant times, he had no contacts with the state of Missouri; the court order setting forth his child support obligation was entered by the state court in Texas; and he was specifically ordered by the Texas state court to make monthly child support payments "through the Dallas County Child Support Office" in Dallas, Texas. He argues that Travis is distinguishable from the present case because the Supreme Court held in Travis that, insofar as the defendant, a union officer, was being prosecuted for filing false affidavits with the National Labor Relations Board, venue was proper only in the District of Columbia; however, the affidavits were required by law to be on file in the District of Columbia. 364 U.S. at 635-37. By contrast, in the present case, Crawford argues, the Texas state court had ordered him to make his payments in Texas. Thus, he concludes, venue is improper in the Eastern District of Missouri, and the district court erred in denying his motion to dismiss the indictment on that basis.

In response, the government observes "[v]enue for a crime is not limited to one district, and may be found even where the defendant is not present. . . . [V]enue properly lies in any district that satisfies either the 'active verb' test or the 'nature and effects' test." Brief for Appellee at 28 (citations omitted). Acknowledging Murphy's contrary outcome, the government maintains that Murphy was wrongly decided. The government argues that the analysis in Murphy is flawed because the district court failed to take into account the continuing nature of a CSRA offense. The government argues that the CSRA's language as a whole, including the words "with respect to a child who resides in another state," contemplates not only the defendant's failure to pay at a particular location, but also the unfulfilled promise or expectation experienced by the child with respect to whom the payment was to be made. On this basis, the government contends that the magistrate judge correctly concluded that the unfulfilled

-15-

expectation which Crawford's children experienced in Missouri was part of a continuing offense within the meaning of 18 U.S.C. § 3237(a). We agree.

A criminal defendant's venue rights are protected by Article III, § 2, and the Sixth Amendment, of the Constitution. Both of these constitutional provisions require that a defendant's trial take place where "the crime shall have been committed." Similarly, Rule 18 of the Federal Rules of Criminal Procedure states "[e]xcept as otherwise permitted by statute or by these rules, the prosecution shall be had in a district in which the offense was committed." However, as to the determination of where a crime was committed for venue purposes, the United States Code provides:

> Except as otherwise expressly provided by enactment of Congress, any offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed.

18 U.S.C. § 3237(a).

The issue of whether Crawford's constitutional and statutory rights have been violated as a result of venue being based upon the place of his children's residence is a question of law which we review de novo. Upon de novo review, we hold that Crawford's venue rights have not been violated. We disagree with the reasoning and conclusion in Murphy because, in our opinion, the CSRA describes a continuing offense which may be prosecuted where the parent-defendant resides, where the parent-defendant is required to make payments, or where the child-victim resides. Applying the "active verb" or "key verb" test, we first note that the key verb phrase in 18 U.S.C. § 228(a) is "fails to pay" and, to the extent that a failure to do something can occur in a particular place, it need not necessarily occur in only one place. Accord United States v. Angotti, 105 F.3d 539, 543 (9th Cir. 1997) (Angotti) ("[w]e reject [the

defendant's] argument, for it erroneously assumes that a key verb can describe conduct occurring in only one venue").

Although the Ninth Circuit's decision in <u>Angotti</u> did not concern a prosecution under the CSRA, its reasoning on the venue issue is highly instructive in the present case. In <u>Angotti</u>, the defendant had been prosecuted and convicted in the Central District of California on six counts, including two counts of making false statements to a federally-insured financial institution in an application for a $480,000 bank loan, which he used to purchase a condominium unit in Northern California. <u>Id.</u> at 541. The defendant had submitted the original loan application to an innocent middle agent, a mortgage company located in the Northern District of California, which in turn restated the false information (not knowing it to be false) to a savings and loan association's local branch office also located in the Northern District of California. <u>Id.</u> However, after the local branch office conditionally approved the application, it sent the application to its company headquarters, located in the Central District of California, for a final decision. <u>Id.</u> The defendant in <u>Angotti</u> challenged venue on the corresponding false statement counts (among others). As in the present case, the substantive criminal statute "d[id] not indicate a method for determining the location of the crime for the purpose of establishing venue." <u>Id.</u> at 542. The Ninth Circuit reasoned that the false statement counts were properly prosecuted in the Central District of California because the defendant's false statements, as originally set forth in the loan application, each constituted a continuing offense that could be prosecuted where the crime was begun, continued, or completed. <u>Id.</u> (citing 18 U.S.C. § 3237(a)). The Ninth Circuit noted that the defendant's false statements were "made for the purpose of influencing the bank official who had the power to approve his loan." <u>Id.</u> at 543. "His act of 'making' the false statements continued until the statements were received by the person whom they were ultimately intended to influence." <u>Id.</u> It is "irrelevant," the Ninth Circuit commented, that the defendant subjectively may not have known the identity or location of the person whom the defendant ultimately intended to influence. <u>Id.</u> The Ninth Circuit further explained:

-17-

There is no question that a crime was committed once [the defendant's] statements reached the bank office in the Northern District; the statement did not have to reach their intended destination in order to constitute a crime. But the documents did reach the Central District. . . . [E]ven though a crime may have been completed earlier, "it does not follow that the crime then terminated, and that what transpired [in the district where officials acted upon the false statement] was irrelevant for venue purposes."

Id. (citations omitted). In response to the dissent's observation that "a result of this analysis is that venue will often be possible in districts with which the defendant had no personal connection, and which may occasionally be distant from where the defendant originated the actions constituting the offense," the majority opined that the appropriate remedy is not to restrict venue but, rather, to permit easy transfer. Id. at 543-44.

Similarly, Crawford's crime under the CSRA of failing to pay past due child support obligations constituted a continuing offense which could have been prosecuted where the crime was begun, continued, or completed. For obvious reasons, it is difficult to conceptualize or to describe the place where a crime was begun, continued, or completed when the crime itself was an omission or failure to act. Nevertheless, if the crime of failing to pay child support obligations occurs anywhere, it is fair to say that it occurs where there is an absence of the required payment. Thus, the crime occurs not only at the place where the payment was to be deposited, but also the place where it was ultimately to be received by the would-be intended recipient. Thus, in the present case, even though Crawford has had no personal contacts with the Eastern District of Missouri, venue was proper in that district because that is the place of residence of the children and custodial parent to whom he owes support -- the place where the money would have been received by the intended recipients.

Moreover, to the extent that the "nature and effects" test may be more appropriate for evaluating venue issues under the CSRA, our holding today comports with that standard as well. See Angotti, 105 F.3d at 544 (key verb test is not the exclusive test for determining venue) (citing cases). The CSRA expressly criminalizes the willful failure to make support payments "with respect to a child who resides in another State." 18 U.S.C. § 228(a). Because the CSRA, by definition, presupposes that the defendant and the child reside in different states, the residence of the child clearly contributes to the nature of the crime. Moreover, the place where the child resides is the place where there is the greatest effect on the victim of the crime, and it is one of the places where interstate commerce is affected. Cf. United States v. Brimberry, 779 F.2d 1339, 1343 (8th Cir. 1985) (venue for bankruptcy fraud prosecution is proper in district where the bankruptcy proceeding was held and the fraud had its impact, even though the defendant's fraudulent acts occurred elsewhere). Therefore, we hold that the district court did not err in denying Crawford's motion to dismiss the indictment on the ground that venue was improper in the Eastern District of Missouri.[16]

Sufficiency of the evidence

Finally, Crawford appeals his conviction on the ground that the evidence was insufficient to support the inference that he acted willfully in failing to make his child support payments. Under our well-established standard for reviewing claims of insufficiency of the evidence, we view the evidence in the light most favorable to the government, giving the government the benefit of all reasonable inferences; we may overturn the verdict only if the evidence is such that a reasonable-minded factfinder

---

[16]As a separate matter, insofar as Crawford may have been inconvenienced by this choice of venue, his remedy was to seek a transfer, which he specifically chose not to do when he voluntarily dismissed his motion for a transfer to the Western District of Louisiana.

must have entertained reasonable doubt as to the government's proof of an essential element of the offense. United States v. Johnson, 18 F.3d 641, 645-46 (8th Cir. 1994) (upholding a conviction upon a trial by the court). In the present case, the evidence showed that Crawford knew he had children and knew he was required to make support payments on their behalf pursuant to the Texas state court's orders. Moreover, the government demonstrated at trial that Crawford earned over $230,000 during the relevant time period. There was ample evidence to support the inference that Crawford voluntarily and intentionally violated a known legal duty to pay past due child support. The evidence was therefore legally sufficient to permit a reasonable trier of fact to conclude beyond a reasonable doubt that the government had proved willfulness. See Cheek v. United States, 498 U.S. 192, 200 (1991) (standard for statutory willfulness is voluntary, intentional violation of a known legal duty). Accordingly, we reject Crawford's sufficiency of the evidence argument.

**Conclusion**

For the foregoing reasons, the judgment of the district court is affirmed

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.