**United States Court of Appeals**
**FOR THE EIGHTH CIRCUIT**

_____

No. 97-1817MN

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | Appeal from the United States |
| | * | District Court for the District |
| v. | * | of Minnesota. |
| | * | |
| Ricky Curtis Williams, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted:  October 23, 1997
Filed:  November 5, 1997

_____

Before FAGG, WOLLMAN, and MORRIS SHEPPARD ARNOLD, Circuit Judges.

_____

FAGG, Circuit Judge.

Ricky Curtis Williams trafficked in cloned cellular telephones.  A cloned cell phone is one that has been programmed with the electronic serial number and mobile identification number of a legitimate cellular-service subscriber.  Because billing is keyed to these numbers, all calls made from the cloned telephone are charged to the legitimate customer, who naturally refuses to pay.  The cellular telephone companies end up absorbing the loss.

Williams pleaded guilty to one count of aiding and abetting fraud in connection with access devices in violation of 18 U.S.C. § 1029(a)(5) (1994) and 18 U.S.C. § 2(a)

(1994). Williams committed the offense to which he pleaded guilty on May 30, 1996, but Williams admitted he began selling cloned cell phones in 1994. According to the district court's loss calculation, Williams's illegal trade cost several cellular telephone companies a total of $211,786.73, a sum that added eight levels to Williams's base offense level. See U.S. Sentencing Guidelines Manual (U.S.S.G.) § 2F1.1(b)(1)(I) (1995). The district court ordered restitution in this amount under the Mandatory Victims Restitution Act of 1996 (MVRA or the Act), which applies in sentencing proceedings when the defendant has been convicted on or after the Act's effective date of April 24, 1996. See 18 U.S.C.A. § 3663A(a)(1) (West Supp. 1997). Although Williams's plea agreement stated "[t]here . . . is no agreement as to restitution," Williams construes this to mean "there [was] 'no agreement' as to the amount of restitution." The plea agreement also said the district court "will have the power to order [Williams] to pay full restitution to any victims of his offense conduct from January 1, 1994 to May 30, 1996," and Williams acknowledges that "under the plea agreement the [district] [c]ourt had authority to order full restitution." Thus, we conclude Williams did agree in his plea agreement to pay restitution to cellular companies beyond what was mandated solely for his offense of conviction. Williams appeals his sentence. We affirm.

Williams first challenges the district court's loss calculation. We review for clear error. See United States v. Manzer, 69 F.3d 222, 228 (8th Cir. 1995). Unsurprisingly, Williams kept no records documenting his illegal phone sales, so the district court computed the financial losses Williams imposed on the cellular companies indirectly, as follows. First, the affected companies identified all the cloned telephones on which calls to Williams were placed between January and June 1996. The district court then calculated the total loss by adding up the charges for all calls made from these telephones during the same six-month period. Williams points out this calculation method takes for granted that Williams sold the cloned telephones on which calls to him were placed. Williams questions this assumption, contending he could have received calls in connection with his legitimate cellular telephone business from cloned

phones he did not sell. Although the district court could not eliminate this possibility, "[t]he court need only make a reasonable estimate of the loss, given the available information." U.S.S.G. § 2F1.1, comment. (n.8). "[T]he loss need not be determined with precision." Id.; see also Manzer, 69 F.3d at 228. We are satisfied the district court's calculation represents a reasonable estimate of the companies' losses. For one thing, only calls placed during the first six months of 1996 were taken into account, despite the fact Williams had been selling cloned telephones since 1994. Further, the district court's calculation method could not capture losses from purchasers who bought cloned phones from Williams but did not happen to call him between January and June 1996. Besides, Williams admitted he had been frequently called by persons to whom he had sold cloned telephones. We find no clear error.

Next, Williams contends applying the MVRA to order restitution in his case violates the Ex Post Facto Clause. Because Williams raises this issue for the first time on appeal, we may vacate the restitution order only if the district court committed plain error. See Fed. R. Crim. P. 52(b); United States v. Olano, 507 U.S. 725, 732 (1993). "To fall within the ex post facto prohibition, a law must be retrospective--that is 'it must apply to events occurring before its enactment'--and it 'must disadvantage the offender affected by it' by altering the definition of criminal conduct or increasing the punishment for the crime." Lynce v. Mathis, 117 S. Ct. 891, 896 (1997) (quoting Weaver v. Graham, 450 U.S. 24, 29 (1981)). Williams argues the MVRA retrospectively increased his punishment for illegal phone sales Williams made before the Act's effective date of April 24, 1996.

The changes wrought by the MVRA do work to Williams's disadvantage. Before the MVRA became effective, the Victim and Witness Protection Act (VWPA) authorized but did not compel district courts to order restitution, see 18 U.S.C. § 3663(a)(1) (1994), and required courts to consider the defendant's financial resources in deciding whether to order restitution, see id. § 3664(a). By contrast, the MVRA makes restitution mandatory for certain crimes, see 18 U.S.C.A. § 3663A(a)(1) (West

Supp. 1997), including an offense (like Williams's) committed by fraud, see id. § 3663A(c)(1)(A)(ii), and the Act mandates that restitution shall be ordered "without consideration of the economic circumstances of the defendant," id. § 3664(f)(1)(A). The question remains, though, whether these changes increase Williams's punishment.

In rejecting an Ex Post Facto Clause challenge to an order of restitution under the Child Support Recovery Act of 1992 (CSRA), we recently said "restitution is not 'punishment' within the meaning of the ex post facto clause." United States v. Crawford, 115 F.3d 1397, 1403 (8th Cir. 1997), cert. denied, 66 U.S.L.W. 3297 (U.S. Oct. 20, 1997) (No. 97-497). With regard to restitution under the MVRA, however, we believe the wording of the Act compels an opposite conclusion because the MVRA provides that the district court shall order restitution "in addition to . . . any other penalty authorized by law. . . ." 18 U.S.C.A. § 3663A(a)(1). The plain meaning is that restitution under the MVRA is a penalty. The CSRA, on the other hand, states violators "shall be punished as provided in subsection (b)," 18 U.S.C. § 228(a) (1994), and then separately provides for restitution in section 228(c). We conclude an order of restitution under the MVRA is punishment for Ex Post Facto Clause purposes. Accord United States v. Baggett, Nos. 96-50492/50494/50495/50515, 1997 WL 594626, at *2-3 (9th Cir. Sept. 29, 1997); United States v. Thompson, 113 F.3d 13, 15 n.1 (2d Cir. 1997).

Nevertheless, the restitution order in this case does not violate the Ex Post Facto Clause because the MVRA does not apply retrospectively here. We recognize the MVRA required the district court to order Williams to pay full restitution for losses arising from illegal sales Williams made before the MVRA became effective. See 18 U.S.C.A. § 3663A(a)(3) (West Supp. 1997) ("The court shall . . . order, if agreed to by the parties in a plea agreement, restitution to persons other than the victim of the offense."); id. § 3664(f)(1)(A) (mandating restitution for full amount of losses). But the date of the offense to which Williams pleaded guilty was May 30, 1996, more than a month after the MVRA took effect. When Williams trafficked in cloned phones on that

date, he had fair warning his criminal conduct could trigger mandatory restitution under § 3663A(a)(3) to persons other than the victim of his May 30 offense, and "that is all the Ex Post Facto Clause requires," United States v. Cooper, 63 F.3d 761, 762 (8th Cir. 1995) (per curiam), cert. denied, 116 S. Ct. 1548 (1996); see also Crawford, 115 F.3d at 1403.

Again for the first time on appeal, Williams contends the MVRA violates the Eighth Amendment because unlike the VWPA, the MVRA prevents the district court from recognizing poverty as a factor at sentencing. Contrary to Williams's view, the MVRA requires the district court to schedule restitution payments taking into account the defendant's resources, projected earnings, and financial obligations--factors courts considered under the VWPA in deciding whether to order restitution. Compare 18 U.S.C.A. § 3664(f)(2) (West Supp. 1997) with 18 U.S.C. 3664(a) (1994). The district court may also direct the defendant to make only nominal payments under appropriate circumstances. See 18 U.S.C.A. § 3664(f)(3)(B) (West Supp. 1997). Finally, Williams claims the MVRA violates the Eighth Amendment by permitting imprisonment for indigence. Because Williams does not assert he has suffered or is about to suffer this punishment, his premature claim is not ripe for review. See Cheffer v. Reno, 55 F.3d 1517, 1523-24 (11th Cir. 1995).

We affirm Williams's sentence.

MORRIS SHEPPARD ARNOLD, Circuit Judge, concurring.

I concur in the judgment of the court, but write separately to expose to view a difficulty that the case raises in my mind.

The district court equated the loss to the relevant companies with the amount of gain to the users of the pirated cellular telephones. In the first place, we do not know, and the government could not tell us at oral argument, how much of this amount

might ultimately be collected from the unauthorized consumers of the telephone services. More fundamentally, however, I believe that the measure of loss employed in this case is completely inappropriate, because the gain to the perpetrators of a crime such as this one may not (indeed, almost always will not) equal the loss to the victims. The cellular telephone market is surely not perfect, and the price charged for cellular telephone calls therefore will not equal the cost to telephone companies of providing those calls. In other words, while a company may charge a customer, say, one dollar for making a certain call, the marginal cost to that company of providing that call may be only one cent. It makes no sense to make a defendant responsible for a dollar when the call cost only a penny to provide.

The telephone companies' loss actually has two components. The first, as we have hinted, is the marginal cost to the companies of the pirated calls. The second is the legitimate business lost from the users of the pirated telephones, some of whom would, it seems likely, have paid for some amount of cellular calls had Williams not made the cloned telephones available to them. The loss attributable to this component of the companies' total losses will be their expected profit from these lost calls (here properly using the actual price of the calls, but subtracting the marginal cost of providing them because the companies would have had to incur that cost anyway if they had actually been providing the calls). One cannot simply assume that all of these calls would have been made, however, for the cloned-telephone users would certainly not have made thousands of dollars worth of calls if they had actually had to pay for them.

The method that the district court used, in contrast to the method outlined above, does not properly calculate loss; it instead compensates the telephone companies for the telephone users' unlawful gain. This method would be appropriate (and even then the marginal cost of providing the calls would have to be subtracted) only if the relevant cellular-telephone companies were operating at 100% capacity when the pirated calls were made, so that every pirated call made prevented a legitimate (and therefore profit-making) call from being made. Then the price-based calculation would be an

appropriate approximation of opportunity cost, assuming that the marginal cost was small. But because it is highly unlikely, despite the government's creative response at oral argument, that all the pirated calls were made to the exclusion of legitimate calls, this method of measuring the loss simply misses the mark.

While it therefore seems to me that the district court committed plain error in applying the measure of loss that it did, the record does not reveal that Mr. Williams's substantial rights were affected, because it is not at all clear that he was prejudiced by the error. The record does not include data sufficient to support a conclusion that the error was prejudicial, and this is a matter on which the defendant has the burden of persuasion. See United States v. Olano, 507 U.S. 725, 734 (1993). Appellant, moreover, did not assert plain error on appeal, and in such circumstances I think that it would be the rarest case, in fact, one in which an injustice was overtly manifest in the record, that would call for a reversal of a judgment. Since, as I have said, this record contains no data from which one could conclude that Mr. Williams's sentence was grossly excessive (or, indeed, that it was excessive at all), I concur in the judgment of the court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-7-