# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-3568

_____

United States of America,        *

                         *

        Plaintiff - Appellee,    *

                         *   Appeal from the United States

    v.                   *   District Court for the Eastern

                         *   District of Arkansas.

Robert Allen Carruth,       *

                         *

        Defendant - Appellant.   *

_____

Submitted: April 12, 2005
Filed: August 15, 2005

_____

Before MURPHY, BYE, and SMITH, Circuit Judges.

_____

MURPHY, Circuit Judge.

Robert Allen Carruth pled guilty to conspiracy to make and possess counterfeit commercial checks, in violation of 18 U.S.C. §§ 371 and 513(a). The district court[1] sentenced Carruth to time served (approximately six months) and ordered him to pay $26,400 in restitution. Carruth appeals the restitution order, arguing that it violates his sixth amendment rights because all but $8,000 of it was based on judge found facts. We affirm.

_____

[1] The Honorable Susan Webber Wright, Chief Judge, United States District Court for the Eastern District of Arkansas.

Carruth and Destinie Hall, also known as Andrea Lynn Barron, responded to an advertisement on February 5, 2004 which offered a minivan for sale. They bought the van with an $8,000 commercial check drawn on a fraudulent account. The seller reported her loss to authorities, and an investigation was initiated. The next day Carruth and Hall were arrested after the Arkansas State Police stopped them for speeding. Checks drawn on financial institutions in Texas, Kentucky, Tennessee, and Arkansas were found in the van. Hall confessed to the officers that she had used check forms and supplies purchased from Home Depot to create commercial checks drawn on local businesses and financial institutions. She reported that she and Carruth would contact individuals who had advertised vehicles for sale, buy the vehicles with counterfeit checks, and then resell the vehicles for cash.

Investigators verified Hall's account with police reports and statements from victims. Carruth's brother Ricky also told investigators that appellants had stayed with his family in Texas for about a week where they had access to his computer system. After the couple left, Ricky Carruth found a commercial check in his home. Investigators determined that Robert Carruth and Hall engaged in their scheme from August 2001 to February 2004 and that they had caused losses of $26,400. That amount of loss was based on four checks, including the $8,000 check for the minivan.

Carruth and Hall were indicted on one count of conspiracy to make and possess counterfeit commercial checks, and the indictment alleged as an overt act the use of the fraudulent $8,000 check to buy the minivan. Carruth pled guilty to the charge in the indictment without a written plea agreement. At his change of plea proceeding he admitted responsibility for the $8,000 check, but it was understood that he would contest responsibility for the other three counterfeit checks at sentencing.

The key issue at the sentencing hearing was what amount of restitution should be ordered. The Mandatory Victims Restitution Act (MVRA) requires that a court order restitution when a defendant has been convicted of an offense against property,

including an offense committed by fraud or deceit. 18 U.S.C. §§ 3663A(a)(1), (c)(1)(A)(ii). If it is not possible to return the victim's property, the MVRA provides that the defendant shall pay in restitution the value of the property on the date of the loss or on the date of sentencing, whichever is greater. § 3663A(b)(1)(B). The United States Sentencing Guidelines Manual incorporates the MVRA formula for restitution of the full amount of victim loss. See U.S.S.G. § 5E1.1(a). Under the MVRA, however, the amount of restitution must be within the scope of the crime charged in the indictment. United States v. Ross, 279 F.3d 600, 609 (8th Cir. 2002); see also United States v. Baker, 25 F.3d 1452, 1456-57 (9th Cir. 1994) (restitution under Victim and Witness Protection Act limited to loss from offense unlike relevant conduct considerations under federal sentencing guidelines).

The government argued at the hearing in the district court that the full $26,400 of loss admitted by Hall in her guilty plea should be attributed to Carruth because they were coconspirators. It called as a witness the probation officer who had prepared Carruth's presentence investigation report. She testified that Carruth had known about all four transactions and that they were all based on the same modus operandi. The district court later found by a preponderance of the evidence that Carruth was accountable for the full $26,400. Carruth objected to this finding, arguing that under Blakely v. Washington, 124 S. Ct. 2531 (2004), it was improper for the court to order restitution based on facts neither admitted by him nor found by a jury beyond a reasonable doubt. The government responded by expressing doubt that Blakely applies to a restitution order under the MVRA.

The court ordered Carruth to pay restitution of $26,400 jointly and severally with Hall, but it also crafted two alternative orders in the event the Supreme Court should extend its Blakely rule. The court apparently considered the restitution issue to be subject to the potential impact of Blakely on the federal sentencing guidelines, for it stated that $26,400 would be the appropriate amount of restitution if the sentencing guidelines were subsequently determined to be unconstitutional in their

-3-

entirety and thus only advisory. If judicial fact finding at sentencing by a preponderance of the evidence were held unconstitutional, $8,000 of restitution should be imposed.

On appeal Carruth argues that his sixth amendment right to a trial by jury, under Blakely and Apprendi v. New Jersey, 530 U.S. 466 (2000), was violated by the amount of restitution ordered beyond $8,000, because "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Apprendi, 530 U.S. at 490. Carruth says that under Blakely the "statutory maximum" for Apprendi analysis is the "maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." Blakely, 124 S. Ct. at 2537. Carruth maintains that the statutory rule that district courts are to determine restitution amounts by a preponderance of the evidence, 18 U.S.C. § 3664(e), is incompatible with these sixth amendment principles.

The government counters that Carruth's sixth amendment analysis is misplaced because restitution was created under a separate statutory scheme and is not a product of the sentencing guidelines. It points out that the MVRA calls for the court to find the amount of loss by a preponderance of the evidence, unlike criminal provisions which are subject to proof beyond a reasonable doubt. It observes that the purpose of restitution is to compensate victims for their losses. Carruth should therefore be accountable to all of the victims of the conspiracy it contends.

Our court has not yet decided whether the Supreme Court's developing sixth amendment jurisprudence impacts orders of restitution under the MVRA, although we have had some occasion to discuss the nature of restitution. In United States v. Williams, 128 F.3d 1239 (8th Cir. 1997), we considered whether an order of restitution under the MVRA would be an unconstitutional violation of the ex post

-4-

facto clause, but we held that since there would be no retroactive application of the MVRA on the facts of the case, there could be no ex post facto violation. Our discussion about whether restitution is a penalty or punishment for ex post facto purposes was thus dicta and not necessary to reach the court's holding. Also significant in terms of the question now before the court is that we had no sixth amendment issue before us in Williams. Neither Apprendi nor Blakely had yet been decided by the Supreme Court, and no question was raised about whether restitution is part of the "maximum sentence" imposed for a crime and whether the amount of restitution is a "fact that increases the penalty for a crime beyond the prescribed statutory maximum." See Blakely, 124 S. Ct. at 2537; Apprendi, 530 U.S. at 490.

Subsequent to Williams and after the Supreme Court issued Apprendi, we faced a somewhat similar issue to the one now before the court in Ross, 279 F.3d at 600. Appellant argued in Ross that restitution in any larger amount than the losses involved in the specific wire fraud transactions which had gone to the jury would violate Apprendi. In a preliminary discussion about whether Apprendi would apply to a restitution order under the MVRA, the court referenced dicta in Williams to the effect that "restitution is a criminal 'penalty,'"[2] but stated that the harder question was whether restitution has a "prescribed statutory maximum." Id. at 609. We concluded that it was not necessary to answer that question, however, because appellant had been convicted of a "broad scheme to defraud" which had losses beyond the individual transactions put to the jury. Id. at 609-10. Thus, the amount of restitution imposed in Ross did not exceed the potential limit on restitution, id. at 609, and the court did not have to decide whether Apprendi applies to restitution orders. Id. at 610.

---

[2]The quoted reference is not exact, for the dicta in Williams only stated that "restitution under the MVRA is a penalty," 123 F.3d at 1241, before concluding that it is punishment for ex post facto purposes. Id.

Those circuits which have squarely addressed the question of whether Apprendi and Blakely apply to restitution orders have decided that they do not because there is no "prescribed statutory maximum." As the Seventh Circuit said when considering an Apprendi argument in an MVRA case, "[section] 3663A does not include a 'statutory maximum' that could be 'increased' by a given finding." United States v. Behrman, 235 F.3d 1049, 1054 (7th Cir. 2000); see also United States v. Syme, 276 F.3d 131, 159 (3d Cir. 2002); United States v. Bearden, 274 F.3d 1031, 1042 (6th Cir. 2001). Those circuits which have considered the question anew in light of Blakely are in agreement that it did not alter the analysis or lead to a different result. See United States v. DeGeorge, 380 F.3d 1203, 1221 (9th Cir. 2004); United States v. Wooten, 377 F.3d 1134, 1144 n.1 (10th Cir. 2004); see also United States v. Trala, 386 F.3d 536, 547 n.15 (3d Cir. 2004).

We agree that neither Apprendi nor Blakely prohibit judicial fact finding for restitution orders. Under the MVRA there is no specific or set upper limit for the amount of restitution in contrast to criminal statutes which provide maximum terms of imprisonment and fine amounts. Instead, restitution is to be ordered "in the full amount" of victim losses as found by the court. 18 U.S.C. § 3664(f)(1)(A). Its amount will therefore vary depending on the value of the property lost. See § 3663A(b)(1)(B). As we recognized in Ross, "there isn't really a 'prescribed' maximum." 279 F.3d at 609. Thus, Apprendi's rule is not implicated. Neither does Blakely affect restitution orders; it dealt with a determinate sentencing scheme rather than a restitution statute without a set maximum limit.

At oral argument Carruth also cited United States v. Booker, 125 S. Ct. 738 (2005), in support of his position. Booker had nothing to say about the MVRA, however, which provides an independent statutory basis for the district court's restitution order. As the Seventh Circuit has pointed out, Booker does not affect restitution orders since they are not subject to any prescribed statutory maximum and they are not in the nature of a criminal penalty. United States v. George, 403 F.3d

470, 473 (7th Cir. 2005).  Restitution is designed to make victims whole, not to punish perpetrators, United States v. Arutunoff, 1 F.3d 1112, 1121 (10th Cir. 1993); it is essentially a civil remedy created by Congress and incorporated into criminal proceedings for reasons of economy and practicality.

Having found no constitutional impediment to the fact finding by the district court in this case, we review the findings of loss for clear error, United States v. Young, 272 F.3d 1052, 1056 (8th Cir. 2001), and find none.  Carruth does not argue that the amount assessed to him exceeds the amount lost by the victims of the conspiracy, only that he personally had not admitted to or been convicted of the total loss from all four checks.  There was ample evidence in the record connecting Carruth to these checks, however.  He admitted his involvement in the charged conspiracy and did not rebut the probation officer's testimony that he knew about all of the checks. The district court did not clearly err by determining that $26,400 was attributable to Carruth and that that was the value of the property lost by the victims of the conspiracy.  See 18 U.S.C. § 3663A(b)(1)(B).

Accordingly, we affirm the judgment of the district court imposing restitution in the amount of $26,400.

BYE, Circuit Judge, dissenting.

Because the strictures of Apprendi v. New Jersey, 560 U.S. 466 (2000), which expand our understanding of the scope of the Sixth Amendment's jury guarantee, apply to an order of restitution, I respectfully dissent.  Id. at 490 (announcing that any fact (other than the fact of a prior conviction) which increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt).

As mentioned by the majority, we addressed, although did not decide, the question of whether <u>Apprendi</u>'s jury guarantee applies to restitution once before in <u>United States v. Ross</u>, 279 F.3d 600, 608-10 (8th Cir. 2002). In <u>Ross</u>, we stated, "<u>Apprendi</u> could only apply if the amount of restitution is based on (1) a 'fact' other than a prior conviction not submitted to the jury, (2) that is used to increase the 'penalty' for a crime (3) beyond a prescribed statutory maximum." <u>Id.</u> at 608. In applying these three components, we found the first two suggested <u>Apprendi</u> may apply to restitution orders. <u>Id.</u> at 608-09. We found "the more difficult question [was] whether the third component applies to restitution, that is, whether restitution is a criminal penalty that can be 'increased . . . beyond the prescribed statutory maximum.'" <u>Id.</u> at 609 (quoting <u>Apprendi</u>, 530 U.S. at 490).

After the Supreme Court's landmark decision in <u>Blakely v. Washington</u>, 542 U.S. 296, 124 S. Ct. 2531 (2004), this question becomes no longer difficult to answer. In <u>Blakely</u>, the Court clarified "the statutory maximum for <u>Apprendi</u> purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." <u>Id.</u> at 2537. With this clarification, precedent dictates a conclusion that any dispute over the amount of restitution due and owing a victim of crime must be submitted to a jury and proved beyond a reasonable doubt.

Indeed, our nearly inconvertible precedent makes clear the determination of the amount of restitution is a "fact." <u>Ross</u>, 279 F.3d at 609 (citing <u>United States v. Bartsh</u>, 985 F.2d 930, 932 (8th Cir. 1993)). Furthermore, restitution must be considered a "criminal penalty." <u>Id.</u> (citing <u>United States v. Williams</u>, 128 F.3d 1239, 1241 (8th Cir. 1997)). In the present case, the district court imposed restitution pursuant to the Mandatory Victim Restitution Act (MVRA). <u>See</u> 18 U.S.C. § 3663A(c)(1)(A)(ii) (requiring the court to order restitution for an offense against property). In <u>Williams</u>, we analyzed the question of whether restitution imposed pursuant to the MVRA was criminal punishment and concluded it was. 128 F.3d at

1241. The majority correctly notes our analysis was dicta, nevertheless, the majority of the other circuits agreed with our conclusion. See United States v. Bearden, 274 F.3d 1031, 1042 n.4 (6th Cir. 2001); United States v. Richards, 204 F.3d 177, 213 (5th Cir. 2000); United States v. Siegel, 153 F.3d 1256, 1260 (11th Cir. 1998); United States v. Edwards, 162 F.3d 87, 89-90 (3d Cir.1998); United States v. Rezaq, 134 F.3d 1121, 1141 n.13 (D.C. Cir. 1998); United States v. Baggett, 125 F.3d 1319, 1321-22 (9th Cir. 1997); United States v. Thompson, 113 F.3d 13, 15 n.1 (2d Cir. 1997). While these cases, including Williams, were admittedly decided in the context of the Ex Post Facto Clause, there is no principled basis on which to distinguish punishment for Ex Post Facto Clause and Sixth Amendment purposes.[3] See United States v. Garcia-Castillo, No. 03-2166, 2005 WL 327698, at *5 (10th Cir. Feb. 11, 2005) (unpublished).

Once we recognize restitution as being a "criminal penalty" the proverbial Apprendi dominoes begin to fall. While many in the pre-Blakely world understandably subscribed to the notion Apprendi does not apply to restitution because restitution statutes do not prescribe a maximum amount,[4] see, e.g., United States v. Bearden, 274 F.3d 1031, 1042 (6th Cir. 2001), this notion is no longer viable in the post-Blakely world which operates under a completely different understanding

---

[3]Likewise, there is no principled basis on which to distinguish the Supreme Court's holding in Kelly v. Robinson, 479 U.S. 36, 50-53 (1986) that restitution obligations are criminal penalties and not compensation for actual pecuniary loss even though the controlling question was dischargeability in bankruptcy proceedings. In other words, I fail to see how restitution can be considered a criminal penalty for bankruptcy and Ex Post Facto Clause purposes, but not Sixth Amendment purposes.

[4]In Ross, we found the statutory maximum or outer limits of a restitution order were controlled by the scope of the indictment. 279 F.3d at 609 (citing United States v. Ramirez, 196 F.3d 895, 900 (8th Cir. 1999)). In view of Blakely, however, we now know the outer limits for Apprendi purposes are controlled by facts reflected in a jury verdict or admitted by the defendant. Blakely, 124 S. Ct. at 2537

of the term prescribed statutory maximum.  To this end, <u>Blakely</u>'s definition of "statutory maximum" bears repeating again, "*the statutory maximum for <u>Apprendi</u> purposes* is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant."  <u>Blakely</u>, 124 S. Ct. at 2537 (emphasis added).  Applying this definition to the present case, it dictates a conclusion that the district court's order imposing a $26,400 restitution amount violates the Sixth Amendment's jury guarantee because all but $8,000 of said amount was based upon facts not admitted to by Carruth or found by a jury beyond a reasonable doubt.  Therefore, in contrast to the majority, I would vacate the district court's restitution order and remand to the district court with instructions to impose a restitution amount consistent with the Sixth Amendment.

_____