**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

————————————

**No. 06-5179**

————————————

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

ALVIN STANLEY ELLIS,

Defendant - Appellant.

————————————

Appeal from the United States District Court for the Eastern
District of North Carolina, at Raleigh.  Terrence W. Boyle,
District Judge.  (5:05-cr-00245)

————————————

Argued:  December 6, 2007          Decided:  February 6, 2008

————————————

Before MICHAEL and KING, Circuit Judges, and Catherine C. BLAKE,
United States District Judge for the District of Maryland, sitting
by designation.

————————————

Vacated and remanded by unpublished per curiam opinion.

————————————

**ARGUED:** George Alan DuBois, Assistant Federal Public Defender,
OFFICE OF THE FEDERAL PUBLIC DEFENDER, Raleigh, North Carolina, for
Appellant.   John Stuart Bruce, OFFICE OF THE UNITED STATES
ATTORNEY, Raleigh, North Carolina, for Appellee. **ON BRIEF:** Thomas
P. McNamara, Federal Public Defender, Raleigh, North Carolina, for
Appellant.  George E. B. Holding, United States Attorney, Anne M.
Hayes, Assistant United States Attorney, Banumathi Rangarajan,
Assistant United States Attorney, OFFICE OF THE UNITED STATES
ATTORNEY, Raleigh, North Carolina, for Appellee.

———————

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

The question in this case is whether the district court abused its discretion in denying a continuance of the trial to permit the defendant to secure the presence of a temporarily unavailable expert witness. While understanding the court's frustration at counsel's delay in requesting the continuance, under the particular circumstances of this case we must find that the denial was an abuse of discretion requiring reversal of the conviction and remand for a new trial.

I.

On September 22, 2005, Alvin Stanley Ellis was indicted on three counts of making a bomb threat in violation of 18 U.S.C. § 844(e). Lumilla Bass, an employee of Amerisource Bergen ("Amerisource"), a pharmaceutical distribution company in Raleigh, North Carolina, found bomb threats on her voice mail at work on August 24, 2004, and again on February 20, 2005.[1] The Amerisource building was evacuated and searched on both occasions; no bomb was found. Amy Davis, a producer for a local news channel, also received a call on February 18, 2005, from a man she described as having "a very deep voice" and a foreign accent, "like a [M]iddle [E]astern accent," (J.A. 65, 70), who claimed there were three

---

[1]The second voice mail had been left two days earlier, on February 18, 2005.

3

bombs set to go off in separate locations in Raleigh and told her to call 911. No bombs were found. Davis listened to the recordings of the calls made to Amerisource and stated that the voices "sounded a lot alike." (J.A. 66).

The call to Davis was identified as made on a calling card purchased by Veronica Stark, Ellis's girlfriend. Ellis, who worked at Amerisource, admitted to using the calling card for two other calls, prior to February 18, 2005, but said he had later lost or discarded the card and denied making any of the threatening calls. Stark listened to the taped calls in May 2005 and told the FBI agent who interviewed her she did not think the voice was that of Ellis. She broke up with Ellis around July 2005, however, and at that time called the FBI and said she had recalled that Ellis sometimes used an accent like that on the taped call. She again listened to the recordings and this time identified Ellis's voice. Her godson, who had prior convictions including one for a false police report, came to listen to the tapes at Stark's request. He also said Ellis used a Middle Eastern accent from time to time and identified his voice on the recorded calls.

Arraignment and trial initially were set for December 15, 2005, and continued at the defendant's request; the court then set the date for Thursday, March 2, 2006.[2] On February 22, 2006,

---

[2]In the Eastern District of North Carolina, apparently it is common practice to set the arraignment and trial for the same date or "term of court."

4

defense counsel requested a continuance because her expected expert witness in voice identification required additional time to complete a voice comparison, and also because the witness would be out of town the week of March 6, 2006. The government did not oppose the continuance, and the court continued the case until June 2006. On June 6, 2006, the court issued a notice setting arraignment for Wednesday, June 14, 2006; on June 12 the court continued the arraignment until Friday, June 16, 2006.

On June 16, 2006, now anticipating that the trial would begin Monday, June 19, 2006, the defendant filed a third motion for continuance, explaining that the government had provided an enhanced version of the tapes only on June 12, 2006, that the defense expert Dr. Rodman would opine that the voice on the tapes was not that of Ellis, that this testimony would be "critical" to the defense, and that Dr. Rodman would be out of the country, in Russia, until July 2, 2006. Government counsel was not available the week of July 2, but did not oppose the continuance, so Ellis's counsel asked for a trial date the week of July 10, 2006.

The district court heard argument on the motion June 16, 2006. Upon learning that defense counsel had known for several months that Dr. Rodman would not be available the last two weeks of June, the court concluded that counsel had not exercised due diligence in requesting the continuance. Noting that Dr. Rodman was an expert and not a fact witness, the court suggested that counsel either

5

bring him back from Russia or find a new expert by Tuesday, June 20, and denied any further continuance. (J.A. 24-26).

That same day defense counsel filed a motion for reconsideration, explaining the importance of Dr. Rodman's testimony and attaching a copy of his curriculum vitae and his report. The government again did not object to the continuance, so long as it had enough time to reach its witnesses prior to their travel to court. When the motion was not immediately ruled on, however, on June 19, 2006, the government filed an opposition noting the inconvenience to its witnesses and suggesting, apparently for the first time, that the expert's testimony would not be admissible under <u>Daubert</u>[3]. The motion was denied orally by the court on June 20, 2006, the first day of trial (J.A. 6), but no statement of reasons is on the record. After a two-day jury trial, Ellis was convicted on all three counts and later sentenced to concurrent 27-month terms of incarceration followed by three years of supervised release. Ellis noted a timely appeal, raising only the denial of the continuance from June until July 2006.

## II.

Trial courts have broad discretion in deciding whether to grant continuances. <u>Morris v. Slappy</u>, 461 U.S. 1, 11-12, 103 S.

---

[3]<u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579, 113 S. Ct. 2786 (1993).

Ct. 1610, 1616 (1983); United States v. Williams, 445 F.3d 724, 738-39 (4th Cir. 2006). "[A] trial court's denial of a continuance is  . . . reviewed for abuse of discretion; even if such an abuse is found, the defendant must show that the error specifically prejudiced her case in order to prevail." Williams, 445 F.3d at 739 (quoting United States v. Hedgepeth, 418 F.3d 411, 419 (4th Cir. 2005)).  Where a continuance is sought to secure the attendance of a witness, this Circuit requires the party seeking the continuance to show "who (the witnesses) are, what their testimony will be, that it will be relevant under the issues in the case and competent, that the witnesses can probably be obtained if the continuance is granted, and that due diligence has been used to obtain their attendance for the trial as set." United States v. Clinger, 681 F.2d 221, 223 (4th Cir. 1982) (finding trial court abused its discretion in denying government a brief continuance to obtain witness). Yet, recognizing that "the denial of a motion for continuance could, under certain circumstances, implicate a defendant's right to present a defense or to confront the witnesses against him," Williams, 445 F.3d at 739-40, this Circuit also has been careful to review the significance of the proffered testimony and the defendant's ability, even in the absence of the requested witness, to present its defense and confront the government's evidence before concluding whether the trial court's broad discretion was abused.  See, e.g., Williams, 445 F.3d at 739-40;

7

Hedgepeth, 418 F.3d at 423-24; United States v. Garman, 748 F.2d 218, 222-23 (4th Cir. 1984) (examining as largely a factual question whether the defendant was foreclosed from presenting his complete defense by the trial court's denial of a continuance). Indeed in Clinger this Circuit emphasized "the higher priority we place upon justice as opposed to judicial expediency," 681 F.2d at 224; see also United States v. Colon, 975 F.2d 128, 130 (4th Cir. 1992).

Whether defense counsel exercised due diligence is a close question. Had this two-day case been heard in early June, or even immediately following the first scheduled arraignment date of June 14, 2006, her witness would have been available. Further, she did not have the final enhanced version of the recording from the government until June 12, 2006. On the other hand, she knew several months in advance that Dr. Rodman was scheduled to be in Russia the last two weeks of June, yet did not alert the trial court to that possibility until it became clear the trial would not start until June 19, 2006. Even assuming, however, a failure of due diligence, the other circumstances must be considered.[4] In her initial motion and her motion to reconsider, defense counsel identified the witness she needed, provided the report explaining his anticipated testimony, stated the witness would be available if

_____

[4]Unfortunately it does not appear that the trial court considered any factors other than counsel's delay.

the continuance were granted and that there was no easy replacement given the nature of the anticipated testimony, and also demonstrated the relevance of the testimony. (J.A. 15-16, 28-36). The government did not object to the continuance, so long as it had time to notify its witnesses; the continuance was only for a few weeks; and the court did not indicate it would not have been available to try the case on the suggested date.

The "competence" or admissibility of the testimony was not challenged except by the government's suggestion, the day before trial, that it might not pass the Daubert test. (J.A. 38). The trial court, however, made no such determination; indeed on Friday he directed defense counsel to "tell this expert to get you an equivalent so you can fully and adequately represent your client and put on a defense." (J.A. 25-26).[5]

Finally, the defense has shown that the absence of the expert's testimony was prejudicial. While the government had significant circumstantial evidence pointing to Ellis, it was not conclusive, and their proof of voice identification rested heavily on two highly impeachable witnesses. Without Dr. Rodman, the defense had no independent witness to deny that the "Middle Eastern" "foreign" voice on the recording was that of the defendant, an African-American citizen of the United States.

---

[5]We are not determining the admissibility of the proffered evidence at this time; we note only that the trial court did not consider the issue, nor has any controlling opinion been cited to us that would make such testimony clearly inadmissible.

9

Under all the circumstances we must reluctantly conclude that the trial court abused its discretion, and the defendant was prejudiced.  Accordingly, the defendant's conviction is vacated, and the case is remanded for a new trial.

<u>VACATED AND REMANDED</u>

10